1999 UT App 014

Marion MARSH, Plaintiff and Appellee,

v.

Scott Allan MARSH, Defendant and Appellant.

No. 971696–CA.

Court of Appeals of Utah.

Jan. 22, 1999.

Richard N. Bigelow, Salt Lake City, for Appellant.

Kellie F. Williams, Corporon & Williams PC, Salt Lake City, for Appellee.

Before Judges WILKINS, GREENWOOD and BENCH.

## OPINION

BENCH, Judge:

¶ 1 Appellant asserts the trial court erred when it did not find appellee in contempt for failure to hold appellant harmless on a mort-gage obligation. In addition, appellant argues that the trial court erred in awarding appellee a percentage of his military separation payment because it was not a retirement benefit as contemplated under the terms of the original divorce decree. We affirm.

## BACKGROUND

¶ 2 The parties to this appeal were divorced in 1989 after fifteen years of marriage. The divorce decree ordered appellant to pay appellee alimony and child support for the parties' four minor children. Appellee was awarded the marital home and ordered to hold appellant harmless on the mortgage secured by the home. The divorce decree also awarded appellee 11/40ths of all military retirement benefits received by appellant.

¶ 3 In November 1991, appellant was involuntarily discharged from the United States Navy when he was passed over for promotion a second time, pursuant to the congressionally mandated "force drawdown" program commonly referred to as the "up or out" policy. See 10 U.S.C.A. § 632 (West 1998). Because appellant had not yet reached retirement eligibility, he received a $30,000 lump sum separation benefit. This lump sum payment was calculated based on years of active service and annual salary. See 10 U.S.C.A. § 1174(d)(1) (West 1998). Appellant later reenlisted in the Naval Reserve and accrued the requisite service time to become eligible for military retirement. He will begin receiving these retirement payments when he reaches age sixty. The $30,-000 separation benefit must then be repaid through deductions from monthly retirement payments. See 10 U.S.C.A. § 1174(h) (West 1998).

¶ 4 After his discharge from the military, appellant failed to pay appellee the court-ordered support. As a result, appellee fell behind on the home's mortgage payments. The lender foreclosed on the home in March 1992, leaving a deficiency debt of $12,469.58. After the foreclosure, the Department of Veteran's Affairs (VA) established a debt of $12,469.58 against appellant as a co-obligor on the mortgage. Appellant requested a waiver of this debt, which the VA granted in December 1993. Through the waiver, appel-

lant received complete relief from the debt unless he wanted to restore his eligibility for future VA loans.

¶ 5 Appellant thereafter submitted a motion asking the trial court to find appellee in contempt for failing to hold him harmless on the mortgage. After a hearing, a commissioner recommended that appellant's motion be denied because his failure to pay the previously ordered child support and alimony caused appellee's inability to pay the mortgage. Appellant then filed an objection to the commissioner's recommendation. Subsequently, appellee filed a Verified Petition for Modification of Divorce Decree and Motion for Relief seeking to modify child support and asserting her claim to 11/40ths of the military separation benefit.

¶ 6 At trial, the court first ruled on appellant's objection to the commissioner's recommendation. The court found that appellant's failure to pay the previously ordered support obligations caused appellee to fall behind on the mortgage payments, which resulted in the foreclosure. The trial court also found that the VA waived the foreclosure deficiency. Based on these findings, the trial court ruled that appellee was not in contempt of the "hold harmless" provision of the divorce decree, and denied appellant's objection to the commissioner's recommendation.

¶ 7 The trial court also found that the $30,000 appellant received when he separated from the Navy was an advancement on his vested retirement. The trial court therefore ruled that appellee was entitled to her 11/40ths share of this benefit. This appeal followed.

## STANDARD OF REVIEW

¶ 8 The decision to hold a party in contempt of court rests within the sound discretion of the trial court and will not be disturbed on appeal unless the trial court's action "is so unreasonable as to be classified as capricious and arbitrary, or a clear abuse of discretion." *Bartholomew v. Bartholomew*, 548 P.2d 238, 240 (Utah 1976).

¶ 9 Additionally, whether the payment appellant received when discharged from the military should be treated as a retirement payment is a question of law, which we review for correctness. *See Toone v. Toone*, 952 P.2d 112, 114 (Utah Ct.App. 1998).

## ANALYSIS

¶ 10 Appellant argues that the trial court erred in refusing to find appellee in contempt for failing to hold appellant harmless on the mortgage. "To find contempt, the court must find from clear and convincing proof that the contemnor knew what was required, had the ability to comply, and willfully and knowingly failed and refused to do so." *Kunzler v. O'Dell*, 855 P.2d 270, 275 (Utah Ct.App.1993).

¶ 11 The divorce decree ordered appellee to hold appellant harmless on the mortgage secured by the former marital home. The decree also ordered appellant to pay appellee child support and alimony. During the time that appellant refused to pay the court-ordered support obligations, appellee was unable to pay the mortgage payments and the VA foreclosed on the home. At appellant's request, the VA waived the outstanding debt remaining after the foreclosure so that appellant would not have to pay anything on the loan deficiency. Appellant asserts "the mere fact that [he] was behind in his support payments does not justify [appellee's] refusal to pay the mortgage." Appellant argues that appellee's exclusive remedy for collecting the arrearage in support payments was mandatory income withholding under the divorce decree and Utah Code Ann. § 78–45–9 (1996). The trial court found, however, that appellee's inability to pay the mortgage resulted from appellant's refusal to pay the court-ordered support obligations. Furthermore, the trial court found that the VA waived the foreclosure deficiency and appellant "paid no monies out of pocket due to the foreclosure." The trial court did not hold appellee in contempt and denied appellant's objection to the commissioner's recommendation.

¶ 12 Our review of the record reveals clear and convincing evidence to support the trial court's findings. We therefore hold that the trial court did not abuse its discretion by

refusing to hold appellee in contempt and denying appellant's objection. *See Myers v. Myers,* 768 P.2d 979, 985 (Utah Ct.App.1989).

¶ 13 Next, appellant maintains that the military separation payment he received is his separate property. He asserts that the lump sum payment is completely different from a military retirement or pension payment and therefore the trial court erred in dividing the benefit under the divorce decree. In support of this position, appellant relies on *In re Marriage of Kuzmiak,* 176 Cal.App.3d 1152, 222 Cal.Rptr. 644, *cert. denied,* 479 U.S. 885, 107 S.Ct. 276, 93 L.Ed.2d 252 (1986).

¶ 14 In *Kuzmiak,* the former husband was involuntarily discharged from the United States Air Force and received a $30,000 separation payment. *See id.* at 645. Almost immediately after being discharged, the husband reenlisted in the Air Force and began accruing time toward retirement benefits he would receive after twenty years of service. *See id.* If the husband later qualified for retirement benefits, the military would deduct the $30,000 separation payment from his retirement payments. *See id.* at 647. The *Kuzmiak* court cited to the legislative history of section 1174, stating that the separation payment was to ease the separating member's reentry into civilian life, and held that the husband's military separation pay was his separate property unless he was currently married or he later qualified for military retirement benefits. *See id.* at 646–47. The court specifically concluded, however, that "[t]here is no reason for finding separation pay to be the member's separate property once the member reenlists and earns a longevity pension." *Id.* at 647. The court therefore held that the former wife had an interest in the service member's nonmatured retirement benefits, including the $30,000 already disbursed. *See id.* at 648.

¶ 15 In this case, appellant similarly received separation pay and then reenlisted. Unlike the former husband in *Kuzmiak,* however, appellant had accrued twenty years of service at the time of trial. Appellant therefore had vested retirement benefits. Thus, even under *Kuzmiak,* there is no basis to treat the lump-sum separation pay as appellant's separate property.

¶ 16 Moreover, we believe that appellant's military severance pay is part of a compensation package that is analogous to retirement pay. *See Chotiner v. Chotiner,* 829 P.2d 829, 832 (Alaska 1992). Like military retirement pay, separation pay is based on the years of service and the level of pay achieved at the time of separation. *See* 10 U.S.C.A. § 1174(d) (calculating separation pay as ten percent of product of member's years of service and twelve times monthly basic pay to which member was entitled at time of separation). The fact that appellant must repay the separation benefit as he receives retirement benefits further supports our conclusion that the payment was a form of retirement pay. *See In re Marriage of Heupel,* 936 P.2d 561, 571 (Colo.1997) (analyzing military special separation benefit lump sum payment). "Specifically, if these benefits were intended to compensate for lost future income, they would not be subject to recoupment from retired pay." *Id.*

¶ 17 To support his argument, appellant points to the legislative history cited in *Kuzmiak* which characterized separation pay as financial assistance to ease the separating member's transition into civilian life. *See Kuzmiak,* 222 Cal.Rptr. at 646 (citing H.R.Rep. No. 1462, 96th Cong., 2d Sess. (1980), *reprinted in* 1980 U.S.C.C.A.N. 6333, 6361). In contrast, other courts have found the 1990 House Report more relevant on the issue of congressional intent. *See In re Marriage of Crawford,* 180 Ariz. 324, 884 P.2d 210, 212 (Ariz.Ct.App.1994); *Heupel,* 936 P.2d at 568; *Kelson v. Kelson,* 675 So.2d 1370, 1373 (Fla.1996). In that report, "the committee recommends a comprehensive package of transition benefits to assist separating personnel *and their families* in readjusting to civilian life. The committee's recommendations include separation pay...." H.R.Rep. No. 665, 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 2931, 2962 (emphasis added). This language shows that separation pay is intended to benefit not just the separating service member, but the service member's family as well.

¶ 18 Furthermore, the evidence presented at trial confirmed that the separation payment was treated as an advance on retire-

ment pay on appellant's W–2 form and by the Internal Revenue Service. An expert witness testified that both retirement pay and separation pay are calculated based on the number of years of service. The expert further testified that the separation payment was "clearly an advance on retirement pay" because the military will recoup the $30,000 through reduced retirement payments to appellant. The expert explained that appellant's retirement payments will be lower while repaying the $30,000 advancement, and appellee will therefore receive 11/40ths of these reduced retirement payments under the Uniformed Services Former Spouses Protection Act. *See* 10 U.S.C.A. § 1408 (West 1998).

¶ 19 Because the separation pay is an advance on appellant's retirement, it is subject to distribution under the divorce decree. *See Woodward v. Woodward*, 656 P.2d 431, 432–33 (Utah 1982) ("The essential criterion is whether a right to the benefit or asset has accrued in whole or in part during the marriage. To the extent the right has so accrued it is subject to equitable distribution."); *see also Gardner v. Gardner*, 748 P.2d 1076, 1079 (Utah 1988) ("[M]arital property 'encompasses all of the assets of every nature possessed by the parties, whenever obtained and from whatever source derived; and this includes any such pension fund or insurance.'"(quoting *Englert v. Englert*, 576 P.2d 1274, 1276 (Utah 1978))). An inequitable distribution would occur if we were to deny appellee her proportionate share of the separation benefit, but require her to participate in repaying the $30,000 through reduced retirement payments while the separation pay is recouped. We therefore hold that the trial court correctly determined that appellee is entitled to her 11/40ths share of the $30,000 benefit. When appellant begins receiving retirement payments, appellee will receive her 11/40ths share of each payment. Thus, both parties will share, in their respective proportions, the loss of retirement pay attributable to the military's recoupment of the $30,000 early distribution.

## CONCLUSION

¶ 20 The trial court did not abuse its discretion by refusing to hold appellee in contempt and denying appellant's objection to the commissioner's recommendation. Furthermore, the trial court properly awarded appellee 11/40ths of the military separation benefit received by appellant. Appellee will also participate in its repayment by receiving 11/40ths of the reduced retirement payments.

¶ 21 Affirmed. Costs to appellee as provided by rule. *See* Utah R.App. P. 34.

¶ 22 WILKINS, Presiding Judge and GREENWOOD, Associate Presiding Judge, concur.