2008 UT App 3

**Linda ANDERSON fka Linda LaRee Thompson, Petitioner and Appellee,**

v.

**Glenn Hunter THOMPSON, Respondent and Appellant.**

No. 20070176–CA.

Court of Appeals of Utah.

Jan. 4, 2008.

Bruce L. Richards and Dean A. Stuart, Salt Lake City, for Appellant.

David J. Friel, Salt Lake City, for Appellee.

Before Judges BILLINGS, DAVIS, and McHUGH.

## OPINION

McHUGH, Judge:

¶1 Respondent Glenn Thompson (Husband) appeals from the trial court's order, which awarded Petitioner Linda Anderson (Wife) a judgment, found Husband in contempt of court for violating the parties' Decree of Divorce, and awarded attorney fees to Wife. We affirm in part, reverse in part, and remand for the entry of more detailed findings of fact regarding the award of attorney fees.

## BACKGROUND

¶2 Husband and Wife married on June 12, 1987, and divorced on April 20, 1999. Four children were born during the course of the marriage. Paragraph nine of the parties' Decree of Divorce (the Decree) stated that "[u]pon the termination of alimony.... [Husband's] monthly child support obligation shall be automatically increased each year by .7% (.007) of [Husband's] gross business receipts ... in order to preserve the ratio of monthly child support to [Husband's] yearly gross business receipts." Paragraph ten of the Decree required Husband to make several payments to Wife "for the benefit of the

children in addition to child support," including money for Christmas and all costs for "non-school extra-curricular activities and lessons." Paragraph twenty of the Decree required Husband to pay Wife "a reasonable annual 'cost of living' increase in alimony."

¶ 3 The parties also entered into a verbal agreement to resolve certain issues not addressed in the Decree. One aspect of Husband and Wife's verbal agreement required the parties to split equally the cost of all of their children's non-school extracurricular activities. A second aspect of the verbal agreement was that Husband would pay Wife's income taxes that were "above and beyond $1200 per month." Both parties complied with the Decree and their oral agreement until 2004, when, according to Wife, Husband failed to pay for the children's extracurricular activities and for Wife's taxes.

¶ 4 In March 2005, Wife filed a Motion for Order to Show Cause and a Petition to Modify Decree of Divorce, both of which alleged that Husband had failed to comply with various obligations under the Decree, including his obligation to pay increased child support upon the termination of alimony. In response, Husband filed an Answer and Counter Petition to Modify Decree of Divorce. At the hearing on the Order to Show Cause, Wife's counsel stated that the parties had reached a "partial resolution and stipulation" whereby Husband and Wife would "exchange their tax returns for the years 2002, 2003, [and] 2004." Based on this stipulation, the parties agreed to reserve the issue of increasing Husband's monthly child support obligations for a future hearing.

¶ 5 Approximately one year later, Wife filed a Motion to Compel, which alleged that Husband had failed to respond to a request for the production of documents. Specifically, the motion sought production of Husband's tax records. In an order dated June 2, 2006, the trial court denied Wife's Motion to Compel without prejudice. In its order, the court noted that Husband's "response to the document request did not provide all documents requested, but set forth explanations as to why certain documents were withheld."

¶ 6 Wife then obtained new counsel and filed a second Motion for Order to Show Cause, which alleged that Husband had failed to pay for the children's extracurricular activities, to comply with discovery requests, and to pay increased child support. At the Order to Show Cause hearing, Wife's counsel clarified that Husband had produced some of the requested tax records, but alleged that Husband had failed to produce the "critical document" showing Husband's "gross receipts or gross revenues" for 2002 through 2004. The trial court also asked why Wife had previously failed to enforce Husband's obligation to pay for extracurricular activities, to which Wife's counsel replied that Wife's view was, " 'I'm not going to be able to get it out of him, so why should I try.' " Finally, after listening to Husband's arguments on the Motion for Order to Show Cause, the trial court stayed the proceedings and set a trial for the parties' petitions to modify. The court also ordered Husband to produce his tax records prior to trial.

¶ 7 During trial, Wife's counsel asked Husband whether he had sent an email to Wife that stated, " 'If you are successful in raising child support, the children will suffer.' " Husband denied making such a statement, and then Wife's counsel had Husband read from a letter written by Husband, which contained the above statement. Husband's counsel objected to the admission of the letter on the grounds that it contained privileged settlement negotiations. Ultimately, the trial court admitted the letter with all but two sentences redacted.

¶ 8 Upon the completion of trial, the trial court entered Findings of Fact and Conclusions of Law. The court determined that Husband had not complied with several provisions of the Decree. First, the court found that Husband had failed to pay for the children's extracurricular activities as required by paragraph ten of the Decree. Second, the court found that Husband did not provide Wife with "a reasonable annual 'cost of living' increase in alimony" as required by paragraph twenty of the Decree. Third, the court determined that Husband failed to provide his tax records to Wife as required by paragraph nine of the Decree. Further, the

trial court made a specific finding, based on the parties' testimony, that Wife was credible but Husband was not. In addition, the court found that although Wife did not bring her enforcement action before the trial court for "a long period of time," such delay was reasonable because Wife had attempted to enforce the Decree several times without success.

¶ 9 Because of Husband's noncompliance with multiple provisions of the Decree, the trial court held Husband in contempt of court and awarded judgment to Wife in the amount of $44,311. In addition, the trial court awarded Wife $7652.97 in attorney fees based on the court's finding that "attorney fees are justified and necessary and reasonable."

¶ 10 Husband appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 11 Husband asserts that the trial court erred by finding him in contempt for his alleged failure to comply with the Decree. "The decision to hold a party in contempt of court rests within the sound discretion of the trial court and will not be disturbed on appeal unless the trial court's action 'is so unreasonable as to be classified as capricious and arbitrary, or a clear abuse of discretion.'" *Marsh v. Marsh*, 1999 UT App 14, ¶ 8, 973 P.2d 988 (quoting *Bartholomew v. Bartholomew*, 548 P.2d 238, 240 (Utah 1976)). In a related argument, Husband claims that the trial court erred by "disregard[ing] the stipulation of the parties and the law of the case ... in finding [Husband] in contempt." We likewise review this contention for an abuse of discretion. *See id.*

■ ¶ 12 Second, Husband argues that the trial court exceeded its discretion by admitting a portion of a letter that contained statements made during settlement negotiations. "In reviewing the admissibility of evidence at trial, we give deference to the trial court's advantageous position, and do not overturn the result unless it is clear the trial court erred." *Davidson v. Prince*, 813 P.2d 1225, 1230 (Utah Ct.App.1991).

■ ¶ 13 Next, Husband claims that Wife should be equitably estopped from re-

ceiving past alimony and child support and that Wife waived any right she had to enforce such payments. "The application of the facts to the legal standard of equitable estopppel is a mixed question of fact and law." *Trolley Square Assocs. v. Nielson*, 886 P.2d 61, 65 (Utah Ct.App.1994). Consequently, we review questions of fact "under a deferential clear error standard," but grant no deference to questions of law. *Terry v. Retirement Bd.*, 2007 UT App 87, ¶ 8, 157 P.3d 362 (internal quotation marks omitted). Similarly, "'whether the trial court employed the proper standard of waiver presents a legal question which is reviewed for correctness, but the actions or events allegedly supporting waiver are factual in nature and should be reviewed as factual determinations, to which we give a [trial] court deference.'" *Smile Inc. Asia Pte. Ltd. v. BriteSmile Mgmt., Inc.*, 2005 UT App 381, ¶ 20, 122 P.3d 654 (quoting *Pledger v. Gillespie*, 1999 UT 54, ¶ 16, 982 P.2d 572).

¶ 14 Husband also challenges the trial court's award of attorney fees to Wife. "[A] trial court must base its award of attorney fees on evidence of the receiving spouse's financial need, the payor spouse's ability to pay, and the reasonableness of the requested fees. The decision to award attorney fees must be based on sufficient findings regarding these factors." *Riley v. Riley*, 2006 UT App 214, ¶ 25, 138 P.3d 84 (internal quotation marks and citation omitted).

■ ¶ 15 Finally, Wife asserts that she should be awarded her attorney fees on appeal. "'Generally, when fees in a divorce case are awarded to the prevailing party at the trial court, and that party in turn prevails on appeal, then fees will also be awarded on appeal.'" *Shinkoskey v. Shinkoskey*, 2001 UT App 44, ¶ 20, 19 P.3d 1005 (quoting *Marshall v. Marshall*, 915 P.2d 508, 517 (Utah Ct.App.1996)).

## ANALYSIS

### I. Contempt of Court

■ ¶ 16 Husband's first argument is that the trial court erred by finding him in contempt of court. "Under Utah law, 'in order

to prove contempt for failure to comply with a court order it must be shown that the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so.' " *Homeyer v. Stagg & Assocs.*, 2006 UT App 89, ¶ 6, 132 P.3d 684 (quoting *Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988)); *see also* Utah Code Ann. § 78-32-1 (2002). The trial court ruled that "[Husband] knew there was an order of the Court and had the ability and capacity to comply with the orders of the Court" and that "[Husband] intentionally chose not to follow the orders of the Court." As such, the trial court found Husband in contempt for failing to follow paragraphs nine, ten, and twenty of the Decree.

¶ 17 On appeal, Husband claims that he should not be held in contempt because he "paid all child support and spousal support as worked out by the parties" and because he complied with the parties' stipulation on production of tax records. In other words, Husband contends that he did not intentionally fail or refuse to comply with the Decree. *See Homeyer*, 2006 UT App 89, ¶ 6, 132 P.3d 684. We disagree.[1]

## A. Production of Documents

¶ 18 Both parties admit that they stipulated to exchange their tax records for 2002 through 2004. However, at the hearing on the second Order to Show Cause, Wife's counsel stated that Husband had produced some documents, but alleged that Husband failed to produce the "critical document" showing Husband's "gross receipts or gross revenues" for 2002 through 2004. Furthermore, according to Wife, she did not receive these "critical" tax records until six days before trial. The trial court found Husband's testimony that he fully complied with the requirement that he produce tax records incredible. We defer to the trial court's unique position to evaluate the credibility of the witnesses. *See Schaumberg v. Schaumberg,* 875 P.2d 598, 603 (Utah Ct.App.1994) (deferring to the trial court's "superior position to judge the credibility of the witnesses and to weigh the evidence").

## B. Child Support and Alimony Payments

¶ 19 Husband also contends that he made all alimony and child support payments required by the Decree and the parties' oral agreement. After considering all the evidence, the trial court expressly found that Husband had failed to pay $31,997 in child support as required by paragraph nine of the Decree and violated paragraph ten of the Decree by failing to pay for $1726 worth of the children's non-school extracurricular activities. The trial court was in the best position to consider the conflicting evidence on this point, and we defer to its findings.

¶ 20 The trial court also ruled that Husband had failed to pay $3808 in cost of living spousal support, as required by paragraph twenty of the Decree. Husband has not specifically challenged this finding on appeal. We therefore affirm the trial court's finding of Husband in contempt of court for his violation of paragraph twenty of the Decree. *See, e.g., Chen v. Stewart*, 2004 UT 82, ¶ 74, 100 P.3d 1177 (affirming because appellant failed to adequately challenge trial court's findings of fact by marshaling the evidence).

¶ 21 In light of the foregoing, we cannot conclude that the trial court's action in finding Husband in contempt for failing to produce his tax records and failing to comply with his child support and alimony obligations " 'is so unreasonable as to be classified as capricious and arbitrary, or a clear abuse of discretion.' " *Marsh v. Marsh*, 1999 UT App 14, ¶ 8, 973 P.2d 988 (quoting *Bartholomew v. Bartholomew*, 548 P.2d 238, 240 (Utah 1976)). We therefore affirm the trial court's decision to hold Husband in contempt of court based on his failure to produce tax records and to pay alimony and child support.

1. Indeed, "[s]o long as [a divorce] decree stands, it is incumbent upon [the parties] to comply with it, or at least to exercise every reasonable effort to comply with it. If because of change in the circumstances of the parties it appears that the decree is inequitable, or impossible to comply with, [a party] may petition for modification." *Osmus v. Osmus*, 114 Utah 216, 198 P.2d 233, 236 (1948).

## C. Additional Arguments

¶ 22 In a related claim, Husband asserts that the trial court should not have found him in contempt because such a ruling "disregard[ed] the stipulation of the parties and the law of the case." These arguments are without merit. As noted above, Husband failed to make all of his child support and alimony obligations and did not fully comply with the stipulation to exchange tax records. Indeed, Husband did not produce the most relevant tax records until six days prior to trial.

¶ 23 Furthermore, the law of the case doctrine is inapplicable here. "The 'law of the case' doctrine specifies that when a legal 'decision [is] made on an issue during one stage of a case,' that decision 'is binding in successive stages of the same litigation.'" *Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 67, 82 P.3d 1076 (alteration in original) (quoting *Thurston v. Box Elder County*, 892 P.2d 1034, 1037 (Utah 1995)). However, there are exceptions to the doctrine: "(1) when there has been an intervening change of controlling authority; (2) when new evidence has become available; or (3) when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice." *Gildea v. Guardian Title Co.*, 2001 UT 75, ¶ 9, 31 P.3d 543 (internal quotation marks omitted). More importantly, "the law of the case doctrine does not prevent a judge from reconsidering his or her previous nonfinal orders." *Macris v. Sculptured Software, Inc.*, 2001 UT 43, ¶ 29, 24 P.3d 984.

¶ 24 In an attempt to apply the law of the case doctrine here, Husband asserts that the trial court's order holding him in contempt is inconsistent with its prior rulings. We agree that the trial court accepted the parties' stipulation and later denied, without prejudice, Wife's motion to compel production of Husband's tax records. However, Wife later filed a new motion in response to Husband's continued failure to produce the documents. During the hearing on the second Order to Show Cause, Wife's counsel explained that Husband had failed to produce the "critical documents" showing his tax information. As a result, the trial court revisited its prior ruling and required Husband to produce his tax records prior to trial. Thus, any change to the court's prior ruling was brought about by Husband's noncompliance, and was well within the trial court's discretion. *See id.* (noting that trial court may reconsider its prior nonfinal rulings). We therefore affirm the trial court's order finding Husband in contempt of court.

## II. Admission of the Settlement Letter

¶ 25 Next, Husband argues that the trial court erred by admitting statements in a letter authored by Husband, which Husband sent to Wife in the context of settlement negotiations. Husband further contends that the trial court should not have relied on these statements in making its determination that Husband's testimony lacked credibility. In response, Wife argues that the statements in the letter were properly admitted because such statements were used to impeach Husband's prior testimony. We review the trial court's determinations regarding the admissibility of evidence under an abuse of discretion standard. *See Davidson v. Prince*, 813 P.2d 1225, 1230 (Utah Ct.App.1991). We affirm because even if the trial court erred by admitting Husband's statements, such error was harmless.

¶ 26 Husband has the burden of proving not only that the trial court erred, but that such error "was substantial and prejudicial in that [Husband] was deprived in some manner of a full and fair consideration of the disputed issues by the [finder of fact]." *Ashton v. Ashton*, 733 P.2d 147, 154 (Utah 1987). We therefore must first determine whether the trial court erred by admitting the settlement letter.

¶ 27 During trial, Wife's counsel asked Husband whether he admitted sending Wife an email stating that "the children will suffer" if Wife succeeded in raising child support. Husband responded that he had not sent such an email. Wife's counsel then had Husband read from a letter written by Husband, which stated, "If successful in raising child support, ultimately, the children will suffer." Prior to entering the letter into evidence, Wife's counsel informed the court that the letter contained "some settlement

discussions" and offered to redact portions of the letter. Husband's counsel then objected to the admission of the letter, arguing that all of its contents were inadmissible as communications made during settlement negotiations. After a colloquy on the issue, the trial court instructed counsel to redact all statements relating to the settlement negotiations. The letter was then admitted with all but two sentences redacted.[2]

¶ 28 In order for statements made during settlement negotiations to be excluded from the evidence, "the party seeking to have evidence of offers to compromise or statements made in the course thereof excluded must show that the discussions in question were made in compromise negotiations." *Davidson*, 813 P.2d at 1232 (internal quotation marks omitted). Husband argues that the entire letter contained settlement negotiations. More specifically, Husband states that the phrase "[i]f successful in raising child support, ultimately the children will suffer" was made in response to a specific settlement amount offered by Wife and was meant to demonstrate that Wife's offer was unacceptable. In response, Wife argues that statements made in settlement negotiations can be admitted for impeachment.

¶ 29 Under rule 408 of the Utah Rules of Evidence, "[e]vidence of conduct or statements made in compromise negotiations is ... not admissible." Utah R. Evid. 408. Rule 408, however, "does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness...." *Id.* Thus, although generally statements made during settlement negotiations are inadmissible under rule 408, there are

exceptions, one of which allows for the admission of statements made during settlement negotiations if offered for another purpose, such as proving bias or prejudice.[3]

¶ 30 As Wife points out, a footnote in our prior case law suggests impeachment as one permissible use of statements made in settlement negotiations. In *Davidson v. Prince*, 813 P.2d 1225 (Utah Ct.App.1991), we stated that "evidence of statements made in settlement negotiations can and should be admitted for purposes of impeachment." *Id.* at 1233 n. 9. Because the *Davidson* court held that the demand at issue was not made in the course of settlement negotiations, *see id.* at 1233, its footnote regarding the impeachment exception to rule 408 is dictum. This statement reflected a then-existing trend among courts interpreting rule 408 of the Federal Rules of Evidence and similar state rules. *See id.* at 1233 n. 9 (discussing several cases in which statements made in settlement negotiations were admitted for purposes of impeachment). This tendency to admit settlement negotiations for impeachment received much criticism. *See EEOC v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1546 (10th Cir. 1991) ("[T]he Court should decide against admitting statements made during settlement negotiations as impeachment evidence when they are used to impeach a party who tried to settle a case but failed. The philosophy of [rule 408 of the Federal Rules of Evidence] is to allow the parties to drop their guard and to talk freely and loosely without fear that a concession made to advance negotiations will be used at trial. Opening the door to impeachment evidence on a regular basis may well result in more restricted negotiations." (internal quotation marks omitted)); *see also* Edward Kimball & Ronald Boyce, *Utah Evidence Law* 4–131 n. 269 (2d ed.2004) (stating that *Davidson* "effectively

---

**2.** The admitted portions of the letter read: "If successful in raising child support, ultimately the children will suffer. I will no longer provide the additional help that I have in the past."

**3.** We note, however, that for statements from settlement negotiations to be admissible "for another purpose, such as proving bias or prejudice of a witness," Utah R. Evid. 408, the negotiations must still be relevant. *See* R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evi-*

*dence* 183 (2006–07 ed.) (noting that a party seeking to admit evidence over a rule 408 objection must show that the evidence is relevant). Indeed, under rule 403 of the Utah Rules of Evidence, any relevant evidence, including impeachment evidence under rule 408, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Utah R. Evid. 403; *see also id.* R. 401 (defining "relevant evidence").

nullifies" rule 408 because "the jury is not likely to make much of the distinction between admission to impeach and admission as substantive evidence").

¶ 31 In 2006, rule 408 of the Federal Rules of Evidence was amended to state that evidence of settlement negotiations is not admissible "to impeach through a prior inconsistent statement or contradiction."[4] Fed.R.Evid. 408. This amendment was in response to the division among the courts over whether settlement negotiations can be admitted for impeachment. *See* Fed.R.Evid. 408 Advisory Committee Notes: 2006 Amendment, 28 U.S.C.A. (West Supp.2007) (noting that 2006 amendments were meant to "settle some questions in the courts about the scope of the Rule"). According to the Advisory Committee Notes, "[t]he amendment prohibits the use of statements made in settlement negotiations when offered to impeach by prior inconsistent statement or through contradiction. Such broad impeachment would tend to swallow the exclusionary rule and would impair the public policy of promoting settlements." *Id.* Thus, Federal rule 408 now explicitly prohibits the use of evidence of settlement negotiations for impeachment by prior inconsistent statement or contradiction.

¶ 32 Rule 408 of the Utah Rules of Evidence has not been amended to include an express prohibition on the use of evidence of settlement negotiations for impeachment of prior inconsistent statements. We recognize, however, the persuasive rationale behind the current trend among courts to exclude evidence of settlement negotiations even for purposes of impeachment. Therefore, we hold that the trial court erred by admitting the statements from Husband's settlement letter. Consequently, to the extent that our dicta in *Davidson* suggests that evidence of settlement negotiations are admissible for purposes of impeachment, we now depart from that non-binding precedent. *See Jones*

*v. Barlow,* 2007 UT 20, ¶ 28, 154 P.3d 808 (noting that dicta is not binding on appellate court).

¶ 33 Nevertheless, we affirm the trial court on the ground that even if it did err by admitting Husband's statements during settlement negotiations, such error was harmless. In order to prove prejudice, Husband must show that the trial court's error "was substantial and prejudicial in that [Husband] was deprived in some manner of a full and fair consideration of the disputed issues by the [finder of fact]." *Ashton v. Ashton,* 733 P.2d 147, 154 (Utah 1987); *see also* Utah R. Civ. P. 61 ("No error in either the admission or the exclusion of evidence ... is ground for granting a new trial or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

¶ 34 Husband argues that the error was prejudicial because the trial court based its determination that he was incredible in part on the impeachment evidence. At trial, however, the court stated that its finding regarding Husband's credibility was also based on Husband's statement that "he was following all of the different measures inside of the ... divorce decree, despite the fact that he admitted that in fact he was behind on a couple of them." The trial court also found Husband's claim that he misinterpreted the requirements of the Decree to be "unreasonable and quite frankly, incredible." Thus, the trial court's finding that Husband was not believable was based on at least two grounds unrelated to the impeachment evidence. We therefore conclude that the admission of the evidence of settlement negotiations did not prejudice Husband, and affirm the trial court.

---

**4.** "When ... there is almost no case law interpreting the Utah rule and the Utah and federal rules are identical, we freely resort to federal law as a useful guide." *Oakwood Vill. LLC v. Albertsons, Inc.,* 2004 UT 101, ¶ 12 n. 1, 104 P.3d 1226 (internal quotation marks omitted). Although the current version of rule 408 of the Federal

Rules of Evidence is no longer identical to rule 408 of the Utah Rules of Evidence, we nonetheless discuss the federal rule as indicative of the current trend regarding the admissibility of evidence of settlement negotiations for impeachment purposes.

## III. Equitable Estoppel and Waiver

¶ 35 Husband asserts that Wife should be equitably estopped from claiming unpaid alimony and child support because she failed to enforce the Decree for several years and because she accepted payments not required by the Decree.[5] There are three elements that must be met to succeed on a claim of equitable estoppel:

> first, a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; next, reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act or failure to act; and, third, injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.

*Youngblood v. Auto–Owners Ins. Co.*, 2007 UT 28, ¶ 14, 158 P.3d 1088 (internal quotation marks omitted). In essence, Husband claims that Wife's failure to enforce the Decree and acceptance of certain payments reasonably led him to comply only partially with the Decree, and that it would be inequitable to require Husband to pay the full amount of unpaid alimony and child support at this late date.

¶ 36 In response, Wife argues that estoppel is inappropriate because her actions demonstrated a desire to enforce fully the Decree. We agree. At trial, Wife testified that "[f]or the first few years" after the parties' divorce, she frequently requested to exchange tax documents and go over expense receipts with Husband. Further, Wife testified that she felt that Husband would never give her the proper documentation and that the only way to enforce the Decree fully would be through litigation. Again, the trial court expressly found that Wife's testimony was credible, which finding we defer to on appellate review. *See Schaumberg v. Schaumberg*, 875 P.2d 598, 603 (Utah Ct. App.1994) (deferring to the trial court's "superior position to judge the credibility of the witnesses and to weigh the evidence"). We therefore reject Husband's equitable estoppel claim.[6]

¶ 37 In a similar vein, Husband argues that "[Wife's] actions in not pursuing recovery of past support and acceptance of payments not required by [the Decree] constitute a waiver" of her right to enforce the Decree. "A waiver is the intentional relinquishment of a known right. To constitute a waiver, there must be an existing right, benefit, or advantage, a knowledge of its existence, and an intention to relinquish it. [The relinquishment] must be distinctly made, although it may be express or implied." *Flake v. Flake*, 2003 UT 17, ¶ 29, 71 P.3d 589 (alteration in original) (internal quotation marks omitted).

¶ 38 Wife again claims that Husband failed to preserve this issue for appeal. *See Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (discussing necessity of preserving issues for appeal). We agree. Because Husband raises his waiver argument for the first time on appeal, and has failed to cite where in the record his argument is preserved, we refuse to address the merits of this claim. *See, e.g., Tindley v. Salt Lake City Sch. Dist.*, 2005 UT 30, ¶ 10 n. 2, 116 P.3d 295 ("With limited

---

5. Wife contends that Husband failed to preserve his estoppel argument for appeal. *See Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 ("Generally, in order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." (internal quotation marks omitted)). Our review of the record, however, reveals that Husband specifically argued the issue of estoppel in the second Motion on the Order to Show Cause and during the trial. We therefore address the merits of Husband's estoppel claim.

6. We note also that " '[t]he right to support from the parents belongs to the minor children and is not subject to being bartered away, extinguished, estopped or in any way defeated by the agreement or conduct of the parents.' " *Andrus v. Andrus*, 2007 UT App 291, ¶ 14, 169 P.3d 754 (quoting *Hills v. Hills*, 638 P.2d 516, 517 (Utah 1981)); *but see Department of Human Servs. ex rel. Parker v. Irizarry*, 945 P.2d 676, 680 (Utah 1997) (holding that mother may, by her actions or representations, be precluded from recovering past due installments of support money to reimburse her for child rearing expenses she incurred before father's paternity was established). Thus, even if Husband were to succeed on his estoppel claim, Wife's actions could not curtail the right of the children to receive future child support from Husband.

exceptions, the practice of this court has been to decline consideration of issues raised for the first time on appeal." (internal quotation marks omitted)).

## IV.  Attorney Fees

¶ 39 Husband challenges the trial court's award of attorney fees to Wife. Husband's primary argument is that attorney fees were improper because the trial court should not have found him in contempt of court.  Given our disposition of Husband's challenge to the contempt finding, we must reject this argument.  Husband also alleges, however, that the trial court did not enter sufficient findings on the reasonableness of Wife's attorney fees or Wife's need for such fees.  We agree.

¶ 40 Under Utah Code section 30–3–3, a trial court "may order a party to pay the costs, attorney fees, and witness fees . . . of the other party to enable the other party to prosecute or defend the action." Utah Code Ann. § 30–3–3(1) (2007).  "In doing so, however, the trial court must base its award of attorney fees 'on evidence of the receiving spouse's financial need, the payor spouse's ability to pay, and the reasonableness of the requested fees.'"  Riley v. Riley, 2006 UT App 214, ¶ 25, 138 P.3d 84 (quoting Childs v. Childs, 967 P.2d 942, 947 (Utah Ct.App. 1998)).  Further, "[t]he decision to award attorney fees 'must be based on sufficient findings regarding these factors.'"  Id. (quoting Shinkoskey v. Shinkoskey, 2001 UT App 44, ¶ 18, 19 P.3d 1005).

¶ 41 Here, the trial court awarded Wife $7652 in attorney fees.  In its Findings of Fact and Conclusions of Law, the court concluded that attorney fees were "justified and necessary and reasonable."  The court also instructed Wife's counsel to "prepare an affidavit of attorney fees incurred by [Wife]." Because the trial court did not set forth findings of fact to support this conclusion, there is no evidence in the court's order "of the receiving spouse's financial need, the payor spouse's ability to pay, and the reasonableness of the requested fees," id. ¶ 25 (internal quotation marks omitted).  Consequently, we agree with Husband and hold that the trial court failed to make the find-

ings of fact needed to support an award of attorney fees to Wife.

¶ 42 " 'The trial court . . . must make the findings of fact explicit in support of its legal conclusions. . . . Without adequate findings of fact, there can be no meaningful appellate review.' "  Shinkoskey, 2001 UT App 44, ¶ 18, 19 P.3d 1005 (omissions in original) (quoting Willey v. Willey, 951 P.2d 226, 230 (Utah 1997)).  Furthermore, " 'unless the record clearly and uncontrovertedly supports the trial court's decision, the absence of adequate findings of fact ordinarily requires remand for more detailed findings by the trial court' "  Id. (quoting Woodward v. Fazzio, 823 P.2d 474, 478 (Utah Ct.App. 1991)).

¶ 43 Finally, Wife urges this court to award her attorney fees on appeal.  "[W]hen fees in a divorce case are awarded to the prevailing party at the trial court, and that party in turn prevails on appeal, then fees will also be awarded on appeal."  Id. ¶ 20 (internal quotation marks omitted).  We have previously held, however, that

> [b]ecause the trial court did not make sufficient findings to support the award of attorney fees to [the receiving spouse], we cannot determine if she should be awarded fees on appeal.  However, if the trial court determines it can make sufficient findings on each of the factors required to support the award then [the receiving spouse] should also receive her reasonable fees on appeal.

Id.  We therefore deny Wife's request for attorney fees on appeal at this time, but if the trial court determines that it can enter sufficient findings of fact to support such an award, the court may also grant Wife her attorney fees on appeal.

## CONCLUSION

¶ 44 The trial court properly held Husband in contempt of court for his intentional violation of the Decree.  Although the court exceeded its discretion by admitting Husband's statements from the settlement letter, the error was harmless because such statements were merely cumulative of other reasons the trial court found Husband's testimony in-

credible. We also hold that Wife is not estopped from enforcing the Decree and that Husband did not preserve his waiver argument. We reverse the trial court's award of attorney fees to Wife and remand for the entry of sufficient findings of fact.

¶ 45 Affirmed in part, reversed in part, and remanded for further proceedings in part.

¶ 46 WE CONCUR: JUDITH M. BILLINGS and JAMES Z. DAVIS, Judges.