1999 UT App 092

**J.W. DANSIE and Jean Dansie, Plaintiffs and Appellants,**

v.

**Craig DANSIE; Bruce H. Evans; Nephi Sandstone Corporation; and Dansie & Dansie, Inc., Defendants and Appellees.**

No. 981068–CA.

Court of Appeals of Utah.

March 25, 1999.

Allen K. Young and Troy K. Fitzgerald, Young, Kester & Petro, Springville, for Appellants.

Craig M. Snyder and Leslie W. Slaugh, Howard, Lewis & Peterson, Provo, for Appellees.

Before WILKINS, P.J., and DAVIS, and ORME, JJ.

## OPINION

DAVIS, Judge:

¶ 1 J.W. and Jean Dansie appeal from the trial court's injunction preventing J.W. from selling materials to Ashgrove Cement (Ashgrove) until the court finds that the gypsum from the Salt Creek Mine supplied by Craig Dansie and Bruce Evans (defendants) has failed to meet Ashgrove's specifications or until the passage of time provided for in a previous order.

## BACKGROUND

¶ 2 This appeal stems from litigation between J.W. and defendants concerning ownership of the Nephi Sandstone Corporation in which both parties claimed breach of agreement. The issues raised in the litigation were resolved by a stipulation (Stipulation) filed February 29, 1996. Paragraph (1) of the Stipulation prohibited each of the parties from making any "derogatory, demeaning, or belittling comments about any of the

other parties to any individual." Paragraph (3) of the Stipulation further provided, in pertinent part:

> J.W. Dansie and Robert Steele, together with all other owners of the Juab Gypsum, L.L.C., will not attempt to contact or enter into any contracts with Ashgrove Cement [or any other customer of Nephi Sandstone Corporation] for a period of eighteen months from the date of the signing of this stipulation or for so long as the gypsum from Nephi Sandstone's operation of the Salt Creek Mine continues to meet Ashgrove Cement's specifications.

¶ 3 An Order implementing the Stipulation was entered June 18, 1996. The Order, specifically "approved as to form" by counsel for both sides, added the language "whichever is later" to paragraph (3) so that it reads "for a period of eighteen months from the date of the parties' Stipulation (February 12, 1996) or for so long as the gypsum from Nephi Sandstone's operation of the Salt Creek Mine continues to meet Ashgrove Cement's specifications, *whichever is later*." (Emphasis added.)

¶ 4 Subsequently, defendants brought a contempt action against J.W., claiming that the Order had been violated. In its Ruling of June 11, 1997, the trial court found that in June 1996, Jason Dansie, Craig's son and J.W.'s grandson, went with a Nephi Sandstone employee to deliver something to J.W. In Jason's presence, J.W. called defendants profane and offensive names. In addition, the court found that J.W. contacted Ashgrove in the spring of 1996 and during October, 1996, shipped Ashgrove nineteen railroad cars of gypsum. The trial court found J.W. in contempt of court for both his improper competition with Nephi Sandstone and his inappropriate, derogatory remarks in the presence of his grandson.

¶ 5 In addition to imposing sanctions upon J.W. for violating the Order, the trial court specifically enjoined J.W. from selling any materials to Ashgrove until the court makes a finding that the gypsum from the Salt Creek Mine fails to meet Ashgrove's specifications or until the passage of time provided for in the original order. The effect of the trial court's specific restrictions was simply to enforce the order already in effect. At the time the trial court made its ruling, plaintiffs moved to amend the order J.W. had previously violated. The Motion to Amend the Order was denied. J.W. then made a motion for a new trial. In denying that motion the trial court noted that:

> [I]t is troubling that after J.W. Dansie's counsel helped him negotiate a settlement with the defendants, who are his son and son-in-law, and after J.W. Dansie signed the agreement, after the agreement was presented to the Court as his voluntary agreement, and after it was incorporated into an order of this Court, then, at the first opportunity, J.W. Dansie set about to violate multiple paragraphs of the Court's order....

This appeal concerns only that portion of the Order in the contempt proceeding that required J.W. to obtain a court finding of specification violation before he could ship gypsum to Ashgrove Cement.

### ISSUE AND STANDARD OF REVIEW

¶ 6 The issue before this court is the validity of the trial court's Order and Judgment requiring J.W. to obtain a court finding of failure to meet specifications before shipping gypsum to Ashgrove Cement. J.W. does not challenge the finding that he was in contempt of the court's original order; instead he argues that the trial court's Order and Judgment in the contempt proceeding violated public policy, indirectly challenging the scope and duration of the original order. An order relating to contempt of court is a matter that rests within the sound discretion of the trial court. *See Bartholomew v. Bartholomew*, 548 P.2d 238, 240 (Utah 1976). "In the absence of any action [by the trial court] which is so unreasonable as to be classified as capricious and arbitrary, or a clear abuse of ... discretion," we will not overturn the trial court's order. *Id.; accord Kunzler v. O'Dell*, 855 P.2d 270, 275 (Utah Ct.App.1993); *see also Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 678 F.2d 470, 478 (3d Cir.1982) (stating that reviewing standard for contempt proceeding "is whether the district court abused its wide discretion in fashioning a remedy").

## ANALYSIS

¶ 7 On appeal, J.W. grounds his argument in the notion that noncompetition agreements must be reasonable in scope and duration and asserts that because the reserves in the Salt Creek Mine are of an indefinite quantity, the noncompetition restraint could continue ad infinitum, thereby creating an unreasonable restriction. Notwithstanding this public policy argument, by asserting that the court's order stemming from the contempt proceeding is against public policy, J.W. is, in effect, challenging the substance of the original order of the trial court. Utah law establishes that:

> "It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience."

*State Tax Comm'n v. Iverson,* 782 P.2d 519, 526 n. 19 (Utah 1989) (quoting *Maggio v. Zeitz,* 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948)).

¶ 8 In this case, the trial court was not called upon to enforce a private noncompetition agreement, but a final, valid, binding court order entered pursuant to the parties' Stipulation and on the advice and full participation of counsel. The record shows that plaintiff chose to ignore the court's order and now seeks to avoid the consequences of his contempt. Therefore, the trial court's decision to compel J.W. to obtain a court finding of failure to meet specifications before shipping gypsum to Ashgrove was well within the court's broad discretion to ensure that the original order was obeyed. There is no evidence that the trial court abused its discretion in any way or that its ruling was arbitrary or capricious. *See Bartholomew,* 548 P.2d at 240.[1]

## CONCLUSION

¶ 9 The content of the parties' written agreement, together with the evidence adduced at the contempt proceeding, adequately supports the trial court's Judgment and Order preventing J.W. from selling materials to Ashgrove until the trial court finds that the gypsum from the Salt Creek Mine no longer meets Ashgrove's specifications.[2] Affirmed.

¶ 10 WE CONCUR: MICHAEL J. WILKINS, Presiding Judge, GREGORY K. ORME, Judge.

---

1. While policy considerations may give us reason to narrow the scope of the trial court's discretion in certain cases, *see State v. Pena,* 869 P.2d 932, 938–39 (Utah 1994), the record before us is virtually void of evidence that plaintiff is unduly burdened—at a level that would suggest the need for paternalistic intervention of an appellate court on public policy grounds—by either the original order or the scope of the trial court's remedies for J.W.'s contempt.

2. The alternative deadline specified in the order, "until the passage of time provided in the original order," i.e., 18 months, is no longer viable because that time has now expired.