2004 UT 44

Robert C. SHIPMAN; Kathleen M. Rollman; Dale Sweat, individually and for and on behalf of West Jordan City, Plaintiffs and Appellants,

v.

Donna EVANS, Mayor of West Jordan City, Donna Evans, an individual; Andrew Allison, West Jordan City Council Member, Andrew Allison, an individual; Lyle Summers, West Jordan City Council Member, Lyle Summers, an individual; Carolyn Nelson, West Jordan City Council Member, Carolyn Nelson, an individual, Defendants and Appellees.

No. 20020103.

Supreme Court of Utah.

May 28, 2004.

Rehearing Denied Sept. 29, 2004.

Kenneth R. Ivory, South Jordan, for plaintiffs.

W. Cullen Battle, J. David Pearce, Salt Lake City, for defendants.

NEHRING, Justice:

¶ 1 Plaintiffs Robert C. Shipman, Kathleen M. Rollman, and Dale Sweat appeal rulings of the trial court dismissing their challenge to the legality of actions contemplated by certain West Jordan officials and denying plaintiffs their attorney fees. We affirm.

## FACTUAL BACKGROUND

¶ 2 This appeal is the byproduct of a contentious episode in the civic history of West Jordan City, Utah. The relevant facts span the political and judicial realms and do not lend themselves to summary recitation. The complexity of the events and elevated passions of the participants [1] have combined to obscure both the formulation and presenta-

---

1. For example, plaintiffs' counsel was physically removed from a West Jordan City Council meet- ing.

tion of legal issues that we take up in this appeal.

¶ 3 The West Jordan City Council considered selling property known as the Sugar Factory property for proposed residential and commercial development. The property is located adjacent to the West Jordan Main City Park. The city council organized a Design Assistance Team ("DAT") to provide ideas and recommendations for the Sugar Factory property. The DAT prepared a plan to sell the property to a commercial developer.

¶ 4 The DAT Plan aroused controversy. The city council responded to the controversy by inviting concerned citizens to formulate their own plans. Plaintiffs, principals in the Committee for Parks & Recreation [Parks & Rec], accepted the invitation and developed a competing plan. Both the DAT Plan and the Parks & Rec Plan were presented to the West Jordan Planning Commission. Although the planning commission recommended the Parks & Rec Plan, the city council preferred the DAT Plan. Because the DAT Plan was incompatible with the city's General Plan,[2] a split city council amended the General Plan to accommodate the development of the DAT Plan, after incorporating a few minor suggestions from the Parks & Rec Plan ("Amended Plan").

¶ 5 Plaintiffs were not satisfied with this decision and sought judicial review of the Amended Plan, naming as defendants West Jordan's mayor and four members of its city council, all of whom had voted for the Amended Plan. Plaintiffs claimed that defendants failed to follow city ordinances in adopting the plan and that the Amended Plan itself did not comply with city ordinances. Plaintiffs sought injunctive and declaratory relief, the removal of defendants from office, and an award of attorney fees under a private attorney general theory.

¶ 6 The trial court held a hearing on plaintiffs' application for a temporary restraining order in May 2001. At the hearing, the parties presented the court with a stipulation in which defendants agreed to provide plaintiffs with forty-five days' notice before taking any action on the property. Finding insufficient evidence of irreparable harm, the trial court denied plaintiffs' motion. Due to the inability of counsel to agree on the form of an order reflecting the court's ruling, no order was entered until October 3, 2001. This order included the parties' earlier stipulation and an interlineated provision in which defendants promised that they would "not award *any contract* for actions pursuant to the [request for proposal] regarding the Sugar Factory Property."[3]

¶ 7 In August 2001, after the May hearing on plaintiffs' motion for a temporary restraining order, but before the order was entered denying it, the city council awarded a consulting contract to French and Associates to design a master plan for the Sugar Factory property based on the Amended Plan. The contract was later abandoned before substantial services were provided or any city funds were expended.

¶ 8 Believing that the contract with French violated the stipulation, plaintiffs renewed their request for injunctive relief. By then, defendants moved to dismiss plaintiffs' substantive claims. The trial court issued a written minute entry and decision denying plaintiffs' renewed motion, granting defendants' motion, and dismissing plaintiffs' claim for attorney fees as private attorneys general. In addition, finding that "there is some basis to believe that defendants may have taken action in violation of the Stipulation entered in open court," the trial court issued, "on its own motion," an order to show cause why defendants should not be held in contempt for the apparent violation.

¶ 9 With this ruling, entered by the trial court on October 22, 2001, only the issue of contempt remained as residue of the lawsuit. Plaintiffs promptly altered this state of affairs by filing a motion to reconsider the

2. The General Plan was adopted in 1995.

3. Plaintiffs repeatedly insist that the trial court granted them injunctive relief. There is no evidence of this. The trial court expressly denied each of plaintiffs' applications for injunctive relief, and none of the trial court's orders contains the content required of temporary restraining orders or preliminary injunctions under Utah Rule of Civil Procedure 65A.

court's order and again asking for attorney fees.

¶ 10 In late November 2001, the trial court conducted a hearing on its order to show cause and on plaintiffs' motion to reconsider. On December 20, 2001, the trial court entered a written ruling striking its own order to show cause. The trial court determined that its order to show cause was an action for criminal contempt requiring a showing of proof beyond a reasonable doubt. The court concluded that the evidence did not meet this standard and, accordingly, did not find defendants guilty of criminal contempt. The trial court also denied plaintiffs' motion to reconsider and explained the grounds for denying plaintiffs an award of attorney fees.

¶ 11 Following this decision, plaintiffs renewed their motion to reconsider and included a request to pursue discovery. In January 2002, the trial court denied this motion.

¶ 12 While the parties jousted in the courtroom, opponents of the Amended Plan were collecting signatures necessary to place an initiative blocking the Amended Plan before the voters in November 2001. The initiative required voter approval of any sale, lease, or transfer of city property, including the Sugar Factory property.

¶ 13 The initiative signature drive succeeded, the voters approved it, and the Amended Plan was nullified. Notwithstanding the enactment of the initiative into law, the city council voted to repeal the Amended Plan, specifically stating that "[r]epealing this action will obviate the need for further litigation about this issue by rendering it moot."

## ANALYSIS

¶ 14 The plaintiffs appeal six[4] issues: (1) whether the trial court erroneously dismissed, sua sponte, plaintiffs' claim for attorney fees; (2) whether the trial court erred in denying attorney fees to plaintiffs under the private attorney general doctrine; (3) whether the trial court erred in dismissing plaintiffs' claim for declaratory relief; (4) whether the trial court denied plaintiffs due process of

law by dismissing their case without motion, notice, or adequate opportunity to be heard; (5) whether the trial court erred in considering only criminal contempt, and not civil contempt, as a penalty when defendants violated the stipulation; and (6) whether the trial court erred in failing to enter adequate findings of fact and conclusions of law. In our analysis we combine the first two issues and address the remaining issues in turn.

## I. ATTORNEY FEES

¶ 15 Plaintiffs raise two issues concerning attorney fees: one procedural, the other substantive. Plaintiffs first challenge the manner in which the trial court dismissed their claim for attorney fees, arguing that it dismissed the claim sua sponte without affording plaintiffs the opportunity to be heard. Next, plaintiffs assert that the trial court erred in rejecting on the merits their claim for private attorney general fees.

¶ 16 We first consider the argument that the trial court erred in the manner in which it considered and dismissed the private attorney general claim. Plaintiffs characterize the trial court's dismissal as "sua sponte." The trial court first dismissed plaintiffs' private attorney general claim in its October 22, 2001, ruling on defendants' motion to dismiss. The motion to dismiss did not expressly seek dismissal of the private attorney general claim. It is nevertheless understandable why the trial court would reach the issue: it had dismissed all of plaintiffs' substantive claims and denied plaintiffs injunctive relief. There was therefore no apparent basis to support an attorney fees award.

¶ 17 Plaintiffs contend, however, that the trial court's dismissal of their private attorney general fee claim was premature, occurring while injunctive relief remained available and before plaintiffs had a full opportunity to reap the extra-judicial benefits of their lawsuit, in particular, the city council's rescission of the Amended Plan.

¶ 18 Plaintiffs' first motion to reconsider raised this point, insisting that the trial

---

4. Initially, plaintiffs presented seven issues for our review. They have withdrawn the issue of whether they lacked authority to commence and maintain an action for removal of defendants from office for committing unlawful activities because defendants are no longer in office.

court improperly denied plaintiffs a hearing. The trial court accepted plaintiffs' invitation to reconsider its dismissal of their attorney fees claim.[5] At the outset of the November 2001 hearing, the trial court announced that it was taking up plaintiffs' motion to reconsider. Despite this express placement of the motion to reconsider on the hearing agenda, counsel for neither party addressed it, instead limiting their remarks to the order to show cause which was also heard that day.

¶ 19 At the conclusion of the hearing, the trial court denied plaintiffs' request to reconsider its dismissal of the private attorney general claim. The hearing adjourned without plaintiffs' counsel voicing either a desire to be heard on the issue or an objection to the court's consideration of the matter.

¶ 20 Plaintiffs renewed their protest that the trial court's sua sponte rulings had denied them an opportunity to be heard on the fate of their private attorney general claim in their second motion to reconsider. Once again, the trial court reviewed the merits of plaintiffs' motion and entered a written ruling explaining its grounds for denying the motion.

¶ 21 The events surrounding the dismissal of the private attorney general claim reflect both a waiver of an opportunity to be heard and actual and ample occasions for the court to be exposed to the substance of plaintiffs' contentions. Taken together, they reveal no procedural error.

 ¶ 22 Next, we review the merits of the trial court's denial of attorney fees under the private attorney general doctrine. In Utah, attorney fees cannot be recovered unless authorized by statute or contract. *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994). "However, in the absence of a statutory or contractual authorization, a court has inherent equitable power to award reasonable attorney fees when it deems it appropriate in the interest of justice and equity." *Id.*

¶ 23 We recently held that "the appropriate standard for reviewing equitable awards of attorney fees is abuse of discretion." *Hughes v. Cafferty*, 2004 UT 22, ¶ 20, 89 P.3d 148. We stated:

> When a court awards attorney fees pursuant to statute or contract, it does so in recognition of a party's legal right to an award. In contrast, a court making an equitable award of fees is concerned not with a party's legal entitlement to an award, but with the equities. In other words, the court must ascertain whether the equities of a given case justify the use of its inherent and discretionary power to award fees.

*Id.* Among the methods of granting an equitable award of attorney fees is a doctrine known as the "private attorney general." Under this doctrine, "[c]ourts ... have awarded attorney fees to a party as a 'private attorney general' when the 'vindication of a strong or societally important public policy' takes place and the necessary costs in doing so 'transcend the individual plaintiff's pecuniary interest to an extent requiring subsidization.'" *Stewart*, 885 P.2d at 783 (quoting *Serrano v. Priest*, 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303, 1314 (1977)).

 ¶ 24 Awards of attorney fees under the private attorney general doctrine are dispensed sparingly. In *Stewart*, we awarded attorney fees under the doctrine but "note[d] the exceptional nature of [that] case. We further note[d] that any future award of attorney fees under this doctrine [would] take an equally extraordinary case." *Id.* at 783 n. 19. In that case, we applied an extremely high standard—that "but for" plaintiffs' action, the ill could not have been cured.

 ¶ 25 In this case, the trial court determined that plaintiffs were not entitled to an equitable award of fees under the private attorney general theory, concluding that plaintiffs' lawsuit did not vindicate a societally important public policy and that the reme-

---

5. The Utah Rules of Civil Procedure do not recognize motions to reconsider. Although we have discouraged these motions, *see Watkiss & Campbell v. Foa & Son*, 808 P.2d 1061, 1063–65 (Utah 1991), they have proliferated in civil actions to the extent that they have become the cheatgrass of the litigation landscape. We acknowledge that the extraordinary circumstance may arise when it is appropriate to request a trial court to reconsider a ruling. These occasions are rare, however, and we encourage attorneys to reverse the trend to make motions to reconsider routine.

dy sought was achieved via initiative, not court order. Because we review this holding under an abuse of discretion standard, we will not undertake our own assessment of whether plaintiffs vindicated a public policy, nor will we attempt to gauge anew the importance of any vindicated policy, nor will we tackle the question of whether plaintiffs' actions were comparable to those we found "extraordinary" in *Stewart*. Instead, we review the trial court's determination that an equitable reward was not merited here only to see if the trial court abused its discretion. We hold that it did not.

¶ 26 Between the November 28 hearing and the December 20 written order, the trial court addressed all three of the *Stewart* criteria. From the bench, the trial court stated:

> [I]t wasn't any decision of this Court that resulted in overturning the actions of the City Council but rather the City Council itself reconsidering its actions in light of changed political realities. I believe that plaintiffs have performed an important service but I do not find that it rises to the level for recoupment of private attorney general fees under our theory of private attorney general.

In its written order, the trial court found "that although plaintiffs have achieved success through the legislative process, they have not obtained any order granting relief in this action and cannot be viewed as prevailing parties entitled to an award of attorneys' fees under a private attorney general theory."

█ ¶ 27 By determining that plaintiffs were not the prevailing party,[6] that the level of service rendered did not rise to the standard required by the private attorney general doctrine, and that the desired result had been achieved through the legislative, not the judicial, process, the trial court properly exercised its equitable judgment using all of the *Stewart* criteria.

¶ 28 Plaintiffs insist that their lawsuit influenced the repeal of the Amended Plan. They cite the comments made in the Request for Council Action on the repealing ordinance stating, "This action is now the subject of a lawsuit filed by members of the Parks Committee and is now pending in District Court. Repealing this action will obviate the need for further litigation about this issue by rendering it moot." Plaintiffs contend that this admission demonstrates the importance of their lawsuit in scuttling the Amended Plan and renders them eligible for fees even if they did not prevail in their lawsuit under the "catalyst" theory of recovery.[7]

¶ 29 We need not decide whether to recognize the catalyst theory as part of our private attorney general jurisprudence. Even if we were to assume that the preservation of the original General Plan dedicating the Sugar Factory property for public use was a societally important public policy sufficient to entitle private attorney general status to plaintiffs, it is by no means clear that the repeal of the ordinance advanced the cause of its preservation in any material way. The adoption of the initiative mandating voter approval of any proposed sale of public property emasculated the Amended Plan. The lawsuit and the initiative effort shared a common objective: blocking the sale of the property for commercial development. The initiative reached the goal first, unaided by the law-

---

6. Plaintiffs dispute the trial court's finding that they were not a prevailing party in the lawsuit. Like the issue of plaintiffs' entitlement to private attorney general fees, this is a question that we review for abuse of discretion. "Which party is the prevailing party is an appropriate question for the trial court. This question depends, to a large measure, on the context of each case, and, therefore, it is appropriate to leave this determination to the sound discretion of the trial court." *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 25, 40 P.3d 1119. Although plaintiffs did not meet their burden to marshal evidence supporting the trial court's prevailing party finding, we note that the fact that all of plaintiffs' claims were dismissed certainly provides a sufficient quantum of evidence which, if properly marshaled, would lead us to affirm the trial court.

7. The catalyst theory suggests that plaintiffs who are not technically a prevailing party should nevertheless be awarded attorney fees if the lawsuit was a significant catalyst in bringing about the desired change. This theory has enjoyed limited success in federal and state courts. *E.g., Robinson v. Kimbrough*, 652 F.2d 458, 465–66 (5th Cir.1980); *Folsom v. Butte County Assoc. of Gov'ts*, 32 Cal.3d 668, 186 Cal.Rptr. 589, 652 P.2d 437, 439 (1982).

suit. Accordingly, substantial evidence supports the conclusion that the demise of the Amended Plan and restoration of the General Plan would have occurred without the repeal of the Amended Plan and irrespective of the lawsuit's role in motivating the city council to repeal the ordinance.

¶ 30 We therefore affirm the decision of the trial court that plaintiffs were not entitled to the equitable remedy of attorney fees under the private attorney general doctrine.

## II. DISMISSAL OF PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF

■ ¶ 31 Plaintiffs appeal the trial court's refusal to grant them a declaration defining the authority of municipal officials to dispose of public park property for private commercial development. The trial court determined that it lacked authority to enjoin a city council from "taking whatever legislative action it deems to be appropriate as long as the city council actions (1) comply with applicable law, and (2) do not violate either a court order or the stipulation offered by defendants in this case." Plaintiffs insist that the trial court owed them a duty to specify the applicable law and to measure defendants' conduct against it. They ask us to remand to the trial court to determine "whether [d]efendants have the authority to dispose of public park property for private commercial development and, if so, how [they must] go about it to protect the genuine public interest in their parklands."

¶ 32 We decline plaintiffs' invitation to remand this issue to the trial court, as this remedy would inevitably require the trial court to render an advisory opinion. The declaratory judgment statute, Utah Code Ann. § 78-33-1 (2003), is not intended to remove the keystone from our judicial framework—the presence of a justiciable controversy—and reconfigure our courts into forums where the curious or the confused may acquire legal guidance. *Baird v. State,* 574 P.2d 713, 716 (Utah 1978) ("A Declaratory Judgment Statute cannot be so construed as to authorize the courts to deliver advisory opinions or pronounce judgments on abstract questions, but there must be the invariable

justiciable controversy present in such cases.").

¶ 33 The enactment of the voter initiative, coupled with the repeal of the Amended Plan, rendered moot the controversy over the propriety of defendants' conduct relating to the Sugar Factory property. With no ongoing case or controversy, the trial court's declaration of law in this matter would be nothing more than an advisory opinion.

■ ¶ 34 We further reject plaintiffs' attempt to sustain the viability of their declaratory relief action by alleging that the city council undertook unlawful conduct relating to the Sugar Factory property in March 2002. The final order appealed from in this action was entered on December 20, 2001, and the trial court's order denying plaintiffs' second motion to reconsider was entered in January 2002. All later-occurring conduct is irrelevant to an assessment of the propriety of the trial court's dismissal of the declaratory relief claim contained in plaintiffs' complaint.

## III. DUE PROCESS

■ ¶ 35 Plaintiffs contend that they were denied due process when the trial court dismissed their first cause of action, in which they alleged that defendants' adoption of the Amended Plan had been unlawful, and their second cause of action, in which they sought injunctive relief at the conclusion of the November 28 hearing. Plaintiffs insist that the dismissal occurred without the benefit of a motion, notice, hearing, or opportunity to conduct discovery. We disagree and affirm the ruling of the trial court. "Because the propriety of a motion to dismiss is a question of law, we review for correctness, giving no deference to the decision of the trial court." *Waddoups v. Amalgamated Sugar Co.,* 2002 UT 69, ¶ 38, 54 P.3d 1054 (internal quotations omitted).

■ ¶ 36 The trial court determined that the legality of defendants' role in adopting the Amended Plan had been mooted because the city council had repealed it. Plaintiffs have not challenged the trial court's finding of mootness, nor have they briefed this ques-

tion. Instead, plaintiffs advance the claim as a due process violation. This imprecise formulation of the issue makes for a rudderless argument. We attempt to bring some direction to it by noting that a court may properly raise sua sponte the issue of mootness. *Soc'y of Prof'l Journalists v. Bullock*, 743 P.2d 1166, 1169 (Utah 1987). By doing so, the court acts in furtherance of a core judicial policy to limit the scope of its power to issues in controversy. *Id.*

¶ 37 A moot claim has lost its ability to provide judicial relief to the litigants. *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 16, 48 P.3d 968. Plaintiffs' first and second claims sought the same relief: to bar defendants from acting on the Amended Plan. The repeal of the Amended Plan provided plaintiffs the complete relief they sought. The trial court could do no more. We therefore affirm the trial court's dismissal of these claims.

## IV. CRIMINAL CONTEMPT

¶ 38 Plaintiffs take issue with the trial court's decision to consider only criminal contempt, and not civil contempt, as a sanction against defendants for their alleged violation of the stipulation which imposed a conditional stand-still on proceeding with the Amended Plan.

¶ 39 We review a trial court's exercise of its contempt power to determine whether it exceeded the scope of its lawful discretion. *Bartholomew v. Bartholomew*, 548 P.2d 238, 240 (Utah 1976); *see also Dansie v. Dansie*, 1999 UT App 92, ¶ 6, 977 P.2d 539 ("An order relating to contempt of court is a matter that rests within the sound discretion of the trial court."). Only rarely will we reverse the trial court's decision in this matter. As our court of appeals correctly stated, "In the absence of any action [by the trial court] which is so unreasonable as to be classified as capricious and arbitrary, or a clear abuse of ... discretion, we will not overturn the trial court's order." *Dansie*, 1999 UT App 92, ¶ 6, 977 P.2d 539 (internal quotations omitted).

¶ 40 The trial court's discretion includes not just the power to decide whether a party should be held in contempt, but the power to determine whether a particular contempt order is civil or criminal. *Von Hake v. Thomas*, 759 P.2d 1162, 1168 (Utah 1988). We have previously stated:

> The primary determinant of whether a particular contempt order is to be labeled civil or criminal is the trial court's purpose in entering the order. A contempt order is criminal if its purpose is to vindicate the court's authority, as by punishing an individual for disobeying an order, even if the order arises from civil proceedings. A contempt order is civil if it has a remedial purpose.

*Id.* (citations omitted).

¶ 41 Here, the trial court initiated the contempt proceeding by issuing an order to show cause. The trial court's decision to treat its proceeding as an action for criminal contempt was, in our view, conclusive evidence of its purpose. We therefore decline to disturb the trial court's ruling and recast the trial court's criminal contempt proceeding into something that it did not intend.

## V. FINDINGS OF FACT AND CONCLUSIONS OF LAW

¶ 42 Finally, plaintiffs claim that the trial court failed to support its December 20 ruling on both its order to show cause and defendants' motions to dismiss with adequate findings of fact and conclusions of law. We disagree.

¶ 43 Plaintiffs have not provided us with any authority to suggest that findings of fact are required when a trial court finds a party is *not* in contempt of court. Such findings of fact are only required when a court finds a party is in contempt of court.

¶ 44 Motions to dismiss, including those considered in the context of motions to reconsider, need not be supported by findings of fact and conclusions of law. Rule 52(a) of the Utah Rules of Civil Procedure states:

> The trial court need not enter findings of fact and conclusions of law in rulings on motions, except as provided in Rule 41(b). The court shall, however, issue a brief written statement of the ground for its

decision on all motions granted under Rules 12(b), 50(a) and (b), 56, and 59 when the motion is based on more than one ground.

Utah R. Civ. P. 52(a). Although well-developed findings of fact may aid an appellate court, we have previously stated that the requirement of a "brief written statement" is minimal, and that "failure to state the grounds for its decision would not constitute reversible error [but only remand]." *Neerings v. Utah State Bar*, 817 P.2d 320, 323 (Utah 1991).

¶ 45 In this case, the trial court greatly exceeded these minimal requirements. Having issued a three-page minute entry and decision on plaintiffs' motion for reconsideration, the trial court clearly fulfilled its duty to state the grounds for its decision and committed no error.

¶ 46 In conclusion, we affirm the decisions of the trial court on all matters now before us.

¶ 47 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING's opinion.