2013 UT App 116

# THE UTAH COURT OF APPEALS

DICKMAN FAMILY PROPERTIES, INC.,
Plaintiff,
*v.*
DONALD J. WHITE AND SHEILA WHITE,
Defendants and Appellants.

MARK WRIGHT,
Witness and Appellee.

Amended Memorandum Decision[1]
No. 20110126-CA
Filed May 9, 2013

Fourth District, Heber Department
The Honorable Derek P. Pullan
No. 070500276

Steven W. Call and Elaine A. Monson, Attorneys
for Appellants
L. Benson Mabey, Attorney for Appellee

JUDGE STEPHEN L. ROTH authored this Amended Memorandum
Decision, in which JUDGES GREGORY K. ORME and
MICHELE M. CHRISTIANSEN concurred.

ROTH, Judge:

¶1      Defendants Donald J. White and Sheila White appeal the
district court's decision that a third-party witness, Mark Wright,

---

1. This Amended Memorandum Decision supersedes the
Memorandum Decision originally issued in this case on October 25,
2012, *see Dickman Family Props., Inc. v. White*, 2012 UT App 299. The
original decision is unchanged, but following the original decision

(continued...)

should not be held in contempt. In particular, the Whites challenge the court's determination that the contempt proceeding was criminal in nature and, thus, required application of the beyond a reasonable doubt standard of proof. According to the Whites, the court should have treated the matter as a civil contempt proceeding and applied a clear and convincing evidence standard of proof. Because the Whites failed to preserve this issue in the district court, we affirm.

¶2     Among other things, "unlawful interference with the process or proceedings of a court" is a "contempt[] of the authority of the court." Utah Code Ann. § 78B-6-301(9) (2008). If a person is found to be in contempt, the court may impose various sanctions, including a fine, incarceration, or a compensatory monetary award to a party aggrieved by another's contempt. *See id.* §§ 78B-6-310, -311. A contempt proceeding may be civil or criminal in nature. "'The primary determinant of whether a particular contempt order is to be labeled civil or criminal is the trial court's purpose in entering the order.'" *Shipman v. Evans*, 2004 UT 44, ¶ 40, 100 P.3d 1151 (quoting *Von Hake v. Thomas*, 759 P.2d 1162, 1168 (Utah 1988), *superseded on other grounds as stated in State v. Hurst*, 821 P.2d 467 (Utah Ct. App. 1991)). "[I]t is the purpose, not the method of the punishment, that serves to distinguish the two types of [contempt] proceedings." *Von Hake*, 759 P.2d at 1168. "'A contempt order is criminal if its purpose is to vindicate the court's authority, as by punishing an individual for disobeying an order, even if the order arises from civil proceedings.'" *Shipman*, 2004 UT 44, ¶ 40 (quoting

---

1. (continued...)
we address arguments raised by the appellant on a petition for rehearing, *see infra* ¶¶ 15–20. *See generally* Utah R. App. P. 35(c) ("If a petition for rehearing is granted, the court may make a final disposition of the cause without reargument, or may restore it to the calendar for reargument or resubmission, or may make such other orders as are deemed appropriate under the circumstances of the particular case.").

*Von Hake*, 759 P.2d at 1168). "A contempt order is civil if it has a remedial purpose, either to coerce an individual to comply with a court order given for the benefit of another party or to compensate an aggrieved party for injuries resulting from the failure to comply with an order." *Von Hake*, 759 P.2d at 1168. The characterization of a contempt proceeding determines the applicable standard of proof: criminal contempt must be proven beyond a reasonable doubt; civil contempt must be proven by clear and convincing evidence. *See id.* at 1172-73.

¶3    "The decision to hold a party in contempt of court rests within the sound discretion of the trial court and will not be disturbed on appeal unless the trial court's action is so unreasonable as to be classified as capricious and arbitrary, or a clear abuse of discretion." *Anderson v. Thompson*, 2008 UT App 3, ¶ 11, 176 P.3d 464 (internal quotation marks omitted); *Shipman*, 2004 UT 44, ¶ 39 (explaining that the district court's exercise of its contempt power is reviewed for an abuse of discretion). That discretion "includes not just the power to decide whether a party should be held in contempt, but the power to determine whether [the purpose of] a particular contempt order is civil or criminal." *Shipman*, 2004 UT 44, ¶ 40 (citing *Von Hake*, 759 P.2d at 1168). "Only rarely will we reverse the [district] court's decision in this matter" and only in circumstances where the court's decision "is so unreasonable as to be classified as capricious and arbitrary, or a clear abuse of . . . discretion." *Id.* ¶ 39 (omission in original) (internal quotation marks omitted).

¶4    During the course of the underlying litigation, the Whites moved for summary judgment against the plaintiff, Dickman Family Properties, Inc. In opposing the Whites' summary judgment motion, the plaintiff submitted a declaration (the Declaration) from the witness. The district court denied the Whites' motion for summary judgment.

¶5    Subsequently, during discovery, the Whites deposed the witness, and his deposition testimony called into question the

accuracy of many of the statements he made in the Declaration. As a result, the Whites moved for an order to show cause, asserting that the witness should be held in contempt for making a false declaration in a court proceeding. *See generally* Utah Code Ann. § 78B-6-301(9) ("[U]nlawful interference with the process or proceedings of a court" is an "act[] . . . in respect to a court or its proceedings [that is a] contempt[] of the authority of the court."). In moving for an order to show cause, the Whites emphasized the criminal nature of the witness's conduct, asserting in particular that in making a false declaration, the witness committed an act of perjury. In addition, the Whites requested an award of attorney fees for the efforts they had made in responding to the Declaration and in bringing the contempt proceeding. *See id.* § 78B-6-311 (permitting an award of "costs and expenses" to a party affected by another's contempt). In response to the Whites' motion, the district court issued an order to show cause and scheduled a hearing.

¶6     At the conclusion of the hearing, the court ruled from the bench, reasoning that the contempt proceeding before it was for the purpose of protecting "the authority and integrity of court processes" and was therefore criminal in nature. The court thus determined that "to prevail, [the Whites] must prove beyond a reasonable doubt that [the witness] willfully and intentionally testified falsely in his Declaration." Applying that burden of proof, the court concluded that "[o]n the evidence presented, [it] c[ould ]not find beyond a reasonable doubt that [the witness] willfully and intentionally testified falsely in [the] . . . Declaration." The court then made factual findings in support of its conclusion:

> The Declaration arose out of communication between [the witness] and counsel for Plaintiff[s]. [The witness] e-mailed counsel regarding his memories that he deemed to be relevant. Counsel prepared a written declaration, which was forwarded to [the witness, who] testified that he reviewed the Declaration . . . and believed [it] to be consistent with his memory to the best of his knowledge.

> The Declaration was prepared early in the case, the reliability of [the witness']s memory has now been tested at deposition. That process has disclosed significant inconsistencies between the Declaration and the [d]eposition, and [the witness] now concedes that the [d]eposition is the better record of his memory.
>
> The events described span decades. [The nature of the case] . . . require[d the witness] to parse through the deep recesses of memory. [The witness] is attempting to recall memories of his boyhood, from even before he turned ten years of age. That inaccuracies are identified after cross-examination is not surprising. Having said that, clearly, in this case more care should have been taken by both counsel and [the witness] in the preparation and ultimate execution of the Declaration. The Declaration submitted to the [c]ourt is the same as the witness taking the oath and testifying in open court, and all legal counsel have a duty to insure that false testimony is not knowingly offered.

The district court accordingly ordered that the contempt proceeding be dismissed.[2]

---

[2]In conjunction with the order to show cause, the district court also considered the Whites' motion to strike the Declaration. Concluding that the witness's deposition was a more accurate record of his memory, the district court granted the motion to strike. In light of the inaccuracies within the Declaration that had been stricken, the Whites renewed their motion for summary judgment, which the district court denied, concluding that, despite the inaccuracies, there were material issues of fact still in dispute.

¶7     At the court's request, the witness submitted a proposed order for dismissal of the contempt proceeding, to which the Whites filed a written objection. In that objection, among other things not at issue here, the Whites complained that the proposed order did not contain a more detailed explanation of the analysis that the court "undertook to determine whether the contempt proceeding[] . . . w[as] civil or criminal in nature." The Whites then specified a few particular statements that they requested be included in the order. The court denied the objection.

¶8     The Whites appeal the district court's ruling, arguing that the court inappropriately categorized the contempt proceeding as criminal rather than civil in nature. In support of this position, the Whites assert a relatively novel legal argument that they, rather than the district court, have the right to determine the purpose of a contempt proceeding that they initiated, contending that as "an aggrieved party[, they have] a civil remedy against a wrongdoer in a contempt proceeding." (Citing Utah Code Ann. § 78B-6-311 (2008); *Clover Leaf Dairy Co. v. Van Gerven*, 73 Utah 471, 275 P. 9, 10 (1929).) In other words, according to the Whites, because they sought attorney fees the contempt proceeding was for a compensatory purpose, making it civil in nature, and the district court therefore was required to treat the proceeding as civil rather than criminal and apply the clear and convincing evidence standard of proof rather than the higher beyond a reasonable doubt standard. According to the Whites, if the clear and convincing evidence standard had been applied, the district court would have had sufficient evidence to find the witness in contempt for filing a false declaration.[3]

---

[3]In arguing that the district court should have applied the clear and convincing evidence standard of proof, the Whites invite this court to apply that standard to the facts and to reach its own conclusion that the witness acted in contempt of court by filing a false declaration. However, were this court to conclude

(continued...)

¶9     We do not reach the legal issue the Whites have presented to us, however, because they have not preserved it for appeal. "[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (alterations in original) (internal quotation marks omitted). "This requirement puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding." *Id.* "For a trial court to be afforded an opportunity to correct the error (1) the issue must be raised in a timely fashion[,] (2) the issue must be specifically raised[,] and (3) the challenging party must introduce supporting evidence or

---

[3](...continued)
that the district court should have applied the clear and convincing evidence standard, the appropriate remedy would be to remand the issue to the district court so that it could apply the correct standard to the applicable facts in exercise of its discretion. This is because the assessment and weighing of facts inherent in reaching a judgment based on the application of any standard of proof is particularly within the province of the trial court and not a proper subject for appellate court decision-making in the first instance. *See generally Willey v. Willey*, 951 P.2d 226, 230 (Utah 1997) ("It is inappropriate in most instances for an appellate court to . . . assume the task of weighing evidence and making its own findings of fact." Rather, "[t]he appellate court . . . . grant[s] considerable deference to the trial court [in regard to fact-intensive matters] due to its familiarity with the facts and the evidence.").

In addition, in a single footnote, the Whites argue that the "evidence shows that even [the beyond a reasonable doubt] standard of proof was satisfied through the evidence presented at trial." This single sentence is insufficient to challenge the district court's findings and conclusions. Notably, the Whites do not mention, let alone challenge, the factual findings the district court made in support of its decision. *See supra* ¶ 6.

relevant legal authority." *Id.* (alterations in original) (internal quotation marks omitted). "Issues that are not raised [in the trial court] are usually deemed waived." *Id.*

¶10    In the section of their appellate brief where the Whites must identify the location in the record where the issue raised on appeal was preserved, the Whites generally direct us to their motion for an order to show cause and its supporting memoranda. *See generally* Utah R. App. P. 24(a)(5)(A) (requiring an appellate brief to contain "[a] statement of the issues presented for review . . . [including] citation to the record showing that the issue was preserved in the trial court"). However, we have been unable to identify any place in these written submissions where the Whites mention the distinction between civil and criminal contempt proceedings or refer to this proceeding as either civil or criminal. Indeed, the request for an award of attorney fees itself is the only thing that suggests that the contempt proceeding might have a civil purpose. On the other hand, the Whites argued that by filing a false declaration, the witness essentially committed perjury, and "if a witness commits perjury, he or she can be reached by contempt proceedings."[4]

¶11    The first time that the nature of the contempt proceeding was directly addressed below by any participant was when the district court itself ruled from the bench that this proceeding was criminal in nature and therefore required application of the beyond a reasonable doubt standard of proof. At that time, the Whites

---

[4]In the witness's response to the Whites' motion for an order to show cause, he explains that contempt proceedings may be either criminal or civil in nature, but he does so without asserting or suggesting that this proceeding is one or the other. This appears to be the only mention of the distinction between civil and criminal contempt proceedings in the Whites' and the witness's memoranda prior to the district court's oral ruling on this matter.

raised no objection. The court's oral ruling was memorialized in a proposed order submitted by the witness, which reiterated that the contempt proceeding was for the purpose of protecting "the authority and integrity of court processes" and was therefore criminal in nature and required that the Whites "prove beyond a reasonable doubt that [the witness] willfully and intentionally testified falsely in his Declaration." The Whites filed a written objection to the order but took no exception to the conclusion regarding the criminal nature of the contempt proceeding and the applicable burden or proof. Rather, the Whites objected that the proposed order did not contain a more detailed explanation of the analysis that the court "undertook to determine whether the contempt proceeding[] . . . w[as] civil or criminal in nature" and requested inclusion in the order of a few additional statements made by the court in entering its oral ruling. Essentially, the Whites' objection simply asked the court to expand the discussion of the basis for the court's conclusion that the proceeding was criminal, but without alerting the court to the seemingly more critical point that they disagreed with the ultimate conclusion that the proceeding was criminal in nature.

¶12    The question of whether the Whites adequately raised this issue to the district court is important given the applicable standard of review. *See Shipman v. Evans*, 2004 UT 44, ¶¶ 39-40, 100 P.3d 1151 (explaining that the district court's exercise of its contempt power is reviewed for an abuse of discretion and that discretion "includes not just the power to decide whether a party should be held in contempt, but the power to determine whether [the purpose of] a particular contempt order is civil or criminal" (citing *Von Hake v. Thomas*, 759 P.2d 1162, 1168 (Utah 1988), *superseded on other grounds as stated in State v. Hurst*, 821 P.2d 467 (Utah Ct. App. 1991))). Here, the district court explicitly "f[ound] that what is at stake [in this case] is the authority and integrity of court processes," and therefore "conclude[d] that these [we]re criminal contempt proceedings." The "court's decision to treat [the contempt] proceeding as an action for criminal contempt [i]s . . . conclusive

evidence of its purpose" in entertaining this contempt proceeding. *See id.* ¶ 41. If the Whites intended the contempt proceeding to be for a compensatory purpose--thus making the proceeding civil, rather than criminal--they should have made that clear to the district court from the beginning so the court could understand exactly what the Whites perceived to be the boundaries of the court's authority. This is particularly pertinent in this situation where the Whites assert that they are entitled to control the purpose of the contempt proceeding by having initiated it--an argument they make in the face of much precedent that suggests that such a determination is within the discretion of the district court. In any event, at the time the court ruled from the bench, the Whites were unambiguously alerted to the fact that their conception of the purpose of the contempt proceeding was very different from the court's in a way that had a significant effect on the applicable standard of proof and, in their view, could be determinative of the outcome of the proceeding itself. At that time, the Whites should have brought this issue to the court's attention. The Whites then let pass another opportunity to bring this issue to the court's attention when they objected to the proposed order without advising the court that, in their view, it had erred by misapprehending the nature of the proceeding and applying the wrong standard of proof.

¶13    Thus, the Whites did not raise this issue to the district court "in such a way that" it would put the court "on notice of the asserted error" and give the court "an opportunity to rule on that issue" and "allow[] for correction at that time in the course of the proceeding." *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801. As a consequence, the district court was never given the opportunity to consider the question the Whites raise on appeal, i.e., whether their request for compensation in the form of attorney fees required that the district court treat the contempt proceeding as civil rather than criminal. Its decision that the proceeding was criminal in nature is otherwise well within the scope of the district

court's discretion under established law, and we see no basis for disturbing it.

¶14    Accordingly, we affirm.

———

ON PETITION FOR REHEARING

¶15    After the issuance of our decision in this case, the Whites submitted a petition for rehearing, requesting that we reconsider our conclusion that they had failed to preserve the issue raised on appeal. We decline to disturb our original decision.

¶16    In their petition for rehearing, the Whites draw our attention to several other places in the record where they requested attorney fees under Utah Code section 78B-6-311 in connection with the contempt proceeding they had initiated against Wright. The fact that they requested attorney fees on more occasions than we identified in our original decision does not address the core preservation problem on which the decision turned, i.e., that they never explained to the district court the particular legal significance that they ascribed to their request for attorney fees. The Whites now persist in their contention that by asking for attorney fees they made the contempt proceeding civil in nature, thus requiring application of a lower standard of proof (clear and convincing evidence), rather than the criminal contempt standard of proof (beyond a reasonable doubt) that the court actually applied. However, the Whites still have not identified any place in the record where they indicated to the court that their request for attorney fees automatically required the court to consider the proceeding to be civil in nature or even mentioned the standard of proof applicable to contempt proceedings, whether civil or criminal.

¶17    Even if a request for attorney fees alone should have been sufficient to communicate such an argument to the court, as the

Whites now contend, when the district court rendered its written decision, it should have become apparent that the district court had not understood that argument because the court explicitly labeled the proceedings as criminal and identified the applicable standard of proof as beyond a reasonable doubt. At that moment, it became crystal clear that the court's view of the proceedings significantly diverged from the Whites', i.e., that the court had misunderstood the legal implications of their bare request for attorney fees. The Whites do not contend that they themselves were unaware of what they now assert as error in the court's decision, yet they made no attempt to alert the court to this core disagreement even though they filed a subsequent objection to the resulting order, criticizing it in a number of other particulars.

¶18    Although the Whites do not characterize their argument in this way, they appear to be claiming that the district court's failure to understand the implication of their request for attorney fees was a mistake so obvious that it amounted to plain error, which is an exception to the preservation requirement. *See generally Danneman v. Danneman*, 2012 UT App 249, ¶ 10, 286 P.3d 309 (mem.) (explaining that to demonstrate plain error, the party asserting an unpreserved issue must show "that (1) the district court erred, (2) the error should have been obvious to the district court, and (3) the error was harmful" (citation and internal quotation marks omitted)). They have provided no plain error analysis, however, and it is not at all clear that the point, even if correct, should have been obvious to the district court.

¶19    In addition, the argument the Whites raised on appeal is not simply that the court abused its discretion in characterizing the contempt proceeding as it did but that the district court erred as a matter of law. In effect, the Whites argue that they, and not the district court, had the authority to determine whether the purpose of the contempt proceeding was civil or criminal. *See supra* ¶ 8. That argument was never articulated to the district court, regardless of how many times the Whites requested attorney fees

or whether the Whites' request for attorney fees should have been interpreted as a request for a civil, as opposed to a criminal, contempt proceeding.

¶20    Accordingly, we decline to change our decision affirming the district court.

————