Amended Memorandum Decision.[1]
ROTH, Judge:
T 1 Defendants Donald J. White and Sheila White appeal the district court's decision that a third-party witness, Mark Wright, should not be held in contempt. In particular, the Whites challenge the court's determination that the contempt proceeding was criminal in nature and, thus, required application of the beyond a reasonable doubt standard of proof. According to the Whites, the court should have treated the matter as a civil contempt proceeding and applied a clear and convincing evidence standard of proof. Because the Whites failed to preserve this issue in the district court, we affirm.
12 Among other things, "unlawful interference with the process or proceedings of a court" is a "contempt[ ] of the authority of the court." Utah Code Ann. § 78B-6-301(9) (2008). If a person is found to be in contempt, the court may impose various sanctions, including a fine, incarceration, or a compensatory monetary award to a party aggrieved by another's contempt. See id. §§ 78B-6-310, -311. A contempt proceeding may be civil or criminal in nature. "'The primary determinant of whether a particular contempt order is to be labeled civil or erimi-nal is the trial court's purpose in entering the order'" Shipman v. Evans, 2004 UT 44, ¶ 40, 100 P.3d 1151 (quoting Von Hake v. Thomas, 759 P.2d 1162, 1168 (Utah 1988), superseded on other grounds as stated in State v. Hurst, 821 P.2d 467 (Utah Ct.App.1991)). "[IJt is the purpose, not the method of the punishment, that serves to distinguish the two types of [contempt] proceedings." Von Hake, 759 P.2d at 1168. "'A contempt order is criminal if its purpose is to vindicate the court's authority, as by punishing an individual for disobeying an order, even if the order arises from civil proceedings.'" Shipman, 2004 UT 44, ¶ 40, 100 P.3d 1151 (quoting Von Hake, 759 P.2d at 1168). "A contempt order is civil if it has a remedial purpose, either to coerce an individual to comply with a court order given for the benefit of another party or to compensate an aggrieved party for injuries resulting from the failure to comply with an order." Von Hake, 759 P.2d at 1168. The characterization of a contempt proceeding determines the applicable standard of proof: criminal contempt must be proven beyond a reasonable doubt; civil contempt must be proven by clear and convincing evidence. See id. at 1172-78.
18 "The decision to hold a party in contempt of court rests within the sound discretion of the trial court and will not be disturbed on appeal unless the trial court's action is so unreasonable as to be classified as capricious and arbitrary, or a clear abuse of discretion." Anderson v. Thompson, 2008 UT App 3, ¶ 11, 176 P.3d 464 (internal quota *836 tion marks omitted); Shipman, 2004 UT 44, ¶ 39, 100 P.3d 1151 (explaining that the district court's exercise of its contempt power is reviewed for an abuse of discretion). That discretion "includes not just the power to decide whether a party should be held in contempt, but the power to determine whether [the purpose of] a particular contempt order is civil or criminal." Shipman, 2004 UT 44, ¶ 40, 100 P.3d 1151 (citing Von Hake, 759 P.2d at 1168). "Only rarely will we reverse the [district] court's decision in this matter" and only in cireamstances where the court's decision "is so unreasonable as to be classified as capricious and arbitrary, or a clear abuse of ... discretion." Id. 189 {omission in original) (internal quotation marks omitted).
During the course of the underlying litigation, the Whites moved for summary judgment against the plaintiff, Dickman Family Properties, Inc. In opposing the Whites' summary judgment motion, the plaintiff submitted a declaration (the Declaration) from the witness. The district court denied the Whites' motion for summary judgment.
T5 Subsequently, during discovery, the Whites deposed the witness, and his deposition testimony called into question the accuracy of many of the statements he made in the Declaration. As a result, the Whites moved for an order to show cause, asserting that the witness should be held in contempt for making a false declaration in a court proceeding. See generally Utah Code Ann. § 78B-6-301(9) ("[UJInlawful interference with the process or proceedings of a court" is an "act[ ] ... in respect to a court or its proceedings [that is al contempt[] of the authority of the court."). In moving for an order to show cause, the Whites emphasized the criminal nature of the witness's conduct, asserting in particular that in making a false declaration, the witness committed an act of perjury. In addition, the Whites requested an award of attorney fees for the efforts they had made in responding to the Declaration and in bringing the contempt proceeding. See id. § T8B-6-311 (permitting an award of "costs and expenses" to a party affected by another's contempt). In response to the Whites' motion, the district court issued an order to show cause and scheduled a hearing.
T6 At the conclusion of the hearing, the court ruled from the bench, reasoning that the contempt proceeding before it was for the purpose of protecting "the authority and integrity of court processes" and was therefore criminal in nature. The court thus determined that "to prevail, [the Whites] must prove beyond a reasonable doubt that [the witness] willfully and intentionally testified falsely in his Declaration." Applying that burden of proof, the court concluded that "[on the evidence presented, [it] clould] not find beyond a reasonable doubt that [the witness] willfully and intentionally testified falsely in [the] ... Declaration." The court then made factual findings in support of its conclusion:
The Declaration arose out of communication between [the witness] and counsel for Plaintifffs]. [The witness] e-mailed counsel regarding his memories that he deemed to be relevant. Counsel prepared a written declaration, which was forwarded to {the witness, whol testified that he reviewed the Declaration ... and believed [it] to be consistent with his memory to the best of his knowledge.
The Declaration was prepared early in the case, the reliability of [the witness']s memory has now been tested at deposition. That process has disclosed significant inconsistencies between the Declaration and the [deposition, and [the witness] now concedes that the [djeposition is the better record of his memory.
The events described span decades. [The nature of the case] ... require[d the witness] to parse through the deep recesses of memory. [The witness] is attempting to recall memories of his boyhood, from even before he turned ten years of age. That inaccuracies are identified after cross-examination is not surprising. Having said that, clearly, in this case more care should have been taken by both counsel and [the witness] in the preparation and ultimate execution of the Declaration. The Declaration submitted to the [cJourt is the same as the witness taking the oath and testifying in open court, and all legal counsel *837 have a duty to insure that false testimony is not knowingly offered.
The district court accordingly ordered that the contempt proceeding be dismissed.[2]
T7 At the court's request, the witness submitted a proposed order for dismissal of the contempt proceeding, to which the Whites filed a written objection. In that objection, among other things not at issue here, the Whites complained that the proposed order did not contain a more detailed explanation of the analysis that the court "undertook to determine whether the contempt proceeding[ ] ... w[as] civil or criminal in nature." The Whites then specified a few particular statements that they requested be included in the order. The court denied the objection.
 18 The Whites appeal the district court's ruling, arguing that the court inappropriately categorized the contempt proceeding as eriminal rather than civil in nature. In support of this position, the Whites assert a relatively novel legal argument that they, rather than the district court, have the right to determine the purpose of a contempt proceeding that they initiated, contending that as "an aggrieved partyl, they have] a civil remedy against a wrongdoer in a contempt proceeding." (Citing Utah Code Ann. § 78B-6-311 (2008); Clover Leaf Dairy Co. v. Van Gerven, 73 Utah 471, 275 P. 9, 10 (1929).) In other words, according to the Whites, because they sought attorney fees the contempt proceeding was for a compensatory purpose, making it civil in nature, and the district court therefore was required to treat the proceeding as civil rather than criminal and apply the clear and convincing evidence standard of proof rather than the higher beyond a reasonable doubt standard. According to the Whites, if the clear and convincing evidence standard had been applied, the district court would have had sufficient evidence to find the witness in contempt for filing a false declaration.[3]
19 We do not reach the legal issue the Whites have presented to us, however, because they have not preserved it for appeal. "[In order to preserve an issue for appeal,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." 438 Main St. v. Easy Heat, Inc., 2004 UT 72, ¶ 51, 99 P.3d 801 (alterations in original) (internal quotation marks omitted). "This requirement puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding." Id. "For a trial court to be afforded an opportunity to correct the error (1) the issue must be raised in a timely fashion|,] (2) the issue must be specifically raised[,] and (8) the challenging party must introduce supporting *838 evidence or relevant legal authority." Id. (alterations in original) (internal quotation marks omitted). "Issues that are not raised [in the trial court] are usually deemed waived." Id.
10 In the section of their appellate brief where the Whites must identify the location in the record where the issue raised on appeal was preserved, the Whites generally direct us to their motion for an order to show cause and its supporting memoranda. See generally Utah R.App. P. 24(a)(5)(A) (requiring an appellate brief to contain "[al statement of the issues presented for review ... [including] citation to the record showing that the issue was preserved in the trial court"). However, we have been unable to identify any place in these written submissions where the Whites mention the distinetion between civil and eriminal contempt proceedings or refer to this proceeding as either civil or criminal. Indeed, the request for an award of attorney fees itself is the only thing that suggests that the contempt proceeding might have a civil purpose. On the other hand, the Whites argued that by filing a false declaration, the witness essentially committed perjury, and "if a witness commits perjury, he or she can be reached by contempt proceedings." [4]
{11 The first time that the nature of the contempt proceeding was directly addressed below by any participant was when the district court itself ruled from the bench that this proceeding was criminal in nature and therefore required application of the beyond a reasonable doubt standard of proof. At that time, the Whites raised no objection. The court's oral ruling was memorialized in a proposed order submitted by the witness, which reiterated that the contempt proceeding was for the purpose of protecting "the authority and integrity of court processes" and was therefore criminal in nature and required that the Whites "prove beyond a reasonable doubt that [the witness] willfully and intentionally testified falsely in his Declaration." The Whites filed a written objection to the order but took no exeeption to the conclusion regarding the criminal nature of the contempt proceeding and the applicable burden or proof. Rather, the Whites objected that the proposed order did not contain a more detailed explanation of the analysis that the court "undertook to determine whether the contempt proceeding[ ] ... w[as] civil or criminal in nature" and requested inclusion in the order of a few additional statements made by the court in entering its oral ruling. Essentially, the Whites objection simply asked the court to expand the discussion of the basis for the court's conclusion that the proceeding was criminal, but without alerting the court to the seemingly more critical point that they disagreed with the ultimate conclusion that the proceeding was criminal in nature.
112 The question of whether the Whites adequately raised this issue to the district court is important given the applicable standard of review. See Shipman v. Evans, 2004 UT 44, ¶¶ 39-40, 100 P.3d 1151 (explaining that the district court's exercise of its contempt power is reviewed for an abuse of discretion and that discretion "includes not just the power to decide whether a party should be held in contempt, but the power to determine whether [the purpose of] a particular contempt order is civil or criminal" (citing Von Hake v. Thomas, 759 P.2d 1162, 1168 (Utah 1988), superseded on other grounds as stated in State v. Hurst, 821 P.2d 467 (Utah Ct.App.1991))). Here, the district court explicitly "f[ound] that what is at stake [in this case] is the authority and integrity of court processes," and therefore "conclude[d] that these [weJre eriminal contempt proceedings." The "court's decision to treat {[the contempt] proceeding as an action for criminal contempt [ils ... conclusive evidence of its purpose" in entertaining this contempt proceeding. See id. 141. If the Whites intended the contempt proceeding to be for a compensatory purpose-thus making the proceeding civil, rather than criminal -they *839 should have made that clear to the district court from the beginning so the court could understand exactly what the Whites perceived to be the boundaries of the court's authority. This is particularly pertinent in this situation where the Whites assert that they are entitled to control the purpose of the contempt proceeding by having initiated it-an argument they make in the face of much precedent that suggests that such a determination is within the discretion of the district court. In any event, at the time the court ruled from the bench, the Whites were unambiguously alerted to the fact that their conception of the purpose of the contempt proceeding was very different from the court's in a way that had a significant effect on the applicable standard of proof and, in their view, could be determinative of the outcome of the proceeding itself. At that time, the Whites should have brought this issue to the court's attention. The Whites then let pass another opportunity to bring this issue to the court's attention when they objected to the proposed order without advising the court that, in their view, it had erred by misapprehending the nature of the proceeding and applying the wrong standard of proof.
113 Thus, the Whites did not raise this issue to the district court "in such a way that" it would put the court "on notice of the asserted error" and give the court "an opportunity to rule on that issue" and "allow[ ] for correction at that time in the course of the proceeding." See 438 Main St. v. Easy Heat, Inc., 2004 UT 72, ¶ 51, 99 P.3d 801. As a consequence, the district court was never given the opportunity to consider the question the Whites raise on appeal, ie., whether their request for compensation in the form of attorney fees required that the district court treat the contempt proceeding as civil rather than criminal. Its decision that the proceeding was criminal in nature is otherwise well within the seope of the district court's discretion under established law, and we see no basis for disturbing it.
1 14 Accordingly, we affirm.
Judges GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

. This Amended Memorandum Decision supersedes the Memorandum Decision originally issued in this case on October 25, 2012, see Dickman Family Props., Inc. v. White, 2012 UT App 299. The original decision is unchanged, but following the original decision we address arguments raised by the appellant on a petition for rehearing, see infra ¶¶ 15-20. See generally Utah R.App. P. 35(c) ("If a petition for rehearing is granted, the court may make a final disposition of the cause without reargument, or may restore it to the calendar for reargument or resubmission, or may make such other orders as are deemed appropriate under the circumstances of the particular case.").

. In conjunction with the order to show cause, the district court also considered the Whites' motion to strike the Declaration. Concluding that the witness's deposition was a more accurate record of his memory, the district court granted the motion to strike. In light of the inaccuracies within the Declaration that had been stricken, the Whites renewed their motion for summary judgment, which the district court denied, concluding that, despite the inaccuracies, there were material issues of fact still in dispute.

. In arguing that the district court should have applied the clear and convincing evidence standard of proof, the Whites invite this court to apply that standard to the facts and to reach its own conclusion that the witness acted in contempt of court by filing a false declaration. However, were this court to conclude that the district court should have applied the clear and convincing evidence standard, the appropriate remedy would be to remand the issue to the district court so that it could apply the correct standard to the applicable facts in exercise of its discretion. This is because the assessment and weighing of facts inherent in reaching a judgment based on the application of any standard of proof is particularly within the province of the trial court and not a proper subject for appellate court decision-making in the first instance. See generally Willey v. Willey, 951 P.2d 226, 230 (Utah 1997) ("'It is inappropriate in most instances for an appellate court to ... assume the task of weighing evidence and making its own findings of fact." Rather, "[the appellate court .... grant[s] considerable deference to the trial court [in regard to fact-intensive matters] due to its familiarity with the facts and the evidence.").
In addition, in a single footnote, the Whites argue that the "evidence shows that even [the beyond a reasonable doubt] standard of proof was satisfied through the evidence presented at trial." This single sentence is insufficient to challenge the district court's findings and conclusions. Notably, the Whites do not mention, let alone challenge, the factual findings the district court made in support of its decision. See supra T 6.

. In the witness's response to the Whites' motion for an order to show cause, he explains that contempt proceedings may be either criminal or civil in nature, but he does so without asserting or suggesting that this proceeding is one or the other. This appears to be the only mention of the distinction between civil and criminal contempt proceedings in the Whites' and the witness's memoranda prior to the district court's oral ruling on this matter.